**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SUSAN A. YOCUM, | : | No. 74 MM 2015 |
| | : | |
| Petitioner | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| PENNSYLVANIA GAMING CONTROL | : | |
| BOARD, | : | ARGUED: April 5, 2016 |
| | : | RESUBMITTED: April 26, 2017 |
| Respondent | : | |

**OPINION**

**JUSTICE DOUGHERTY**                **DECIDED: May 25, 2017**

We consider the petition for review filed by Susan A. Yocum, Esquire, in this Court's original jurisdiction pursuant to the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§1101-1904 (the Gaming Act). Petitioner challenges as unconstitutional certain restrictions imposed upon attorneys who are employed by the Pennsylvania Gaming Control Board (Board), and seeks declaratory and injunctive relief. The Board filed preliminary objections, asserting petitioner lacks standing to pursue her claim, her claim is not yet ripe, and in any event, her claim fails on the merits. We overrule the Board's preliminary objections as to standing and ripeness, but

nevertheless conclude petitioner is not entitled to relief on the merits as the restrictions included in the Gaming Act are constitutionally sound.[1]

Petitioner is an attorney employed by the Board. At all relevant times, the Gaming Act has set forth various requirements and restrictions applicable to Board members and certain other persons employed by and associated with the Board. When petitioner was first hired in 2008, the Gaming Act prohibited Board employees from soliciting, recommending or accepting employment with a licensed gaming facility for a period of two years after termination of employment with the Board.[2] The Gaming Act also restricted Board employees from accepting employment with an applicant, licensed entity, affiliate, intermediary subsidiary or holding company of an applicant or licensed entity for one year after termination, and appearing before the Board in any hearing or proceeding for two years after termination.[3] In 2010, the Act was amended to, *inter alia*, specifically identify the executive director, bureau directors and attorneys as types of employees prohibited from appearing before the Board for two years after termination, and also to extend the general one-year prohibition on accepting employment with a licensed gaming entity or an affiliate, intermediary, subsidiary or holding company of an

_____

[1] We note our review of preliminary objections in the first instance is highly unusual, and derives from the General Assembly's vesting of exclusive original jurisdiction in this Court "to hear any challenge to or to render a declaratory judgment concerning the constitutionality of" the Gaming Act. 4 Pa.C.S. §1904; *see also Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 392 (Pa. 2005) (Gaming Act vested Supreme Court with original and exclusive jurisdiction to resolve any constitutional challenges to Gaming Act).

[2] 4 Pa.C.S. §1201(h)(8) (amended 2006).

[3] 4 Pa.C.S. §1201(h)(13) (amended 2006).

applicant or licensed entity to two years after termination. 4 Pa.C.S. §1201(h)(13) (as amended 2010). Specifically, Section 1201(h) currently provides in pertinent part as follows:

**(h) Qualifications and restrictions.--**

\* \* \* \*

(8) No member, employee or independent contractor of the board may directly or indirectly solicit, request, suggest or recommend to any applicant, licensed entity, or an affiliate, intermediary, subsidiary or holding company thereof or to any principal, employee, independent contractor or agent thereof, the appointment or employment of any person in any capacity by the applicant, licensed entity, or an affiliate, intermediary, subsidiary or holding company thereof **for a period of two years from the termination of term of office, employment or contract with the board.**

\* \* \* \*

(13) The following shall apply to an employee of the board whose duties substantially involve licensing, enforcement, development of law, promulgation of regulations or development of policy, relating to gaming under this part or who has other discretionary authority which may affect or influence the outcome of an action, proceeding or decision under this part, **including the executive director, bureau directors and attorneys**:

(i) The individual **may not, for a period of two years following termination of employment, accept employment** with or be retained by an applicant or a licensed entity or by an affiliate, intermediary, subsidiary or holding company of an applicant or a licensed entity.

(ii) The individual **may not, for a period of two years following termination of employment, appear before the board** in a hearing or proceeding or participate in activity on behalf of any applicant, licensee, permittee or licensed entity or on behalf of an affiliate, intermediary, subsidiary or holding company of any applicant, licensee, permittee or licensed entity.

(iii) An applicant or a licensed entity or an affiliate, intermediary, subsidiary or holding company of an applicant or a licensed entity **may not, until the expiration of two years following termination of employment, employ or retain the individual.** Violation of this subparagraph shall result in termination of the individual's employment

and subject the violator to section 1518(c) (relating to prohibited acts; penalties).

> (iv) A prospective employee who, upon employment, would be subject to this paragraph must, as a condition of employment, sign an affidavit that the prospective employee will not violate subparagraph (i) or (ii). If the prospective employee fails to sign the affidavit, the board shall rescind any offer of employment and shall not employ the individual.

4 Pa.C.S. §1201(h)(8) and (13) (emphases added). Petitioner — who holds the position of Assistant Chief Counsel III — is subject to the restrictions identified in Section 1201(h)(8) and (13). *See* 4 Pa.C.S. §1201(h)(14.1); Petition for Review, Exhibit B.

Petitioner, who now wishes to seek and accept new employment as an attorney representing gaming clients, filed this petition for review requesting: (1) a declaration the restrictions of Section 1208(h) violate Article V, Section 10 of the Pennsylvania Constitution,[4] which vests in this Court the exclusive authority to govern the practice of

---

[4] In relevant part, Article V, Section 10 provides:

> (c) **The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts,** justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, **and for admission to the bar and to practice law,** and the administration of all courts and supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. **All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions**. . . . .

(…continued)

law; and (2) a permanent injunction against the enforcement of the challenged restrictions. Specifically, petitioner alleges that, "[a]s a current Gaming Board attorney, [she] desires to seek and accept employment as an attorney representing gaming clients." Amended Petition for Review at ¶6. She states she is currently "faced with two equally unappealing and untenable options to leave the employ of the Gaming Board." *Id.* at ¶8.

> Option one is to test the Gaming Act's employment provisions by violating them, actively seeking a legal position with a licensee, affiliate or law firm that represents licensees or affiliates knowing that if Petitioner accepted a position and left the Gaming Board, the licensee or affiliate could be subject to administrative penalties, Petitioner's position, by statute, would be terminated and Petitioner could be subject to sanction for breach of fiduciary duty to clients for placing Petitioner's interests before her client's interests. Thus, Petitioner would be risking harm to her reputation and her ability to continue practicing law in the Commonwealth and the licensees and affiliates would be risking administrative penalty.

> The other option for Petitioner is to forgo the practice of law in her area of expertise, or with any law firm that represents any licensees or their affiliates.

*Id.* at ¶¶9, 12 (citations omitted).

The Board filed preliminary objections to the petition for review, pursuant to Pa.R.C.P. 1028(a)(4), alleging insufficiency of the pleading in various respects. The Board claims (1) petitioner lacks standing to challenge so-called "post-employment"

---

(continued…)

PA. CONST. art. V, §10(c) (emphasis added).

restrictions of the Act,[5] as she is still employed by the Board, and has not yet been aggrieved by their enforcement against her; (2) petitioner's claims are not yet ripe because she is still an employee of the Board and enforcement of post-employment restrictions against her is hypothetical and speculative; (3) petitioner's request for pre-enforcement review is premature; (4) the Rules of Professional Conduct allow protections against conflicts of interest as provided in the Act; and (5) the Act's post-employment restrictions do not violate the separation of powers as circumscribed in Article V, Section 10(c).

A preliminary objection to the legal sufficiency of a pleading (a demurrer) raises questions of law, and a court must decide whether it is clear from the well-pleaded facts and reasonable inferences from those facts that the claimant has not established a right to relief. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 272 (Pa. 2005), *citing Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 624, n.1 (Pa. 1999) (in determining preliminary objections in nature of demurrer, all material facts set forth in the pleading, and all inferences therefrom, are accepted as true). Preliminary objections in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Id.* at 274, *quoting MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1056 (Pa. 1996).

---

[5] We note the Board often refers to the challenged restrictions as "post-employment" restrictions, but as we explain further *infra*, the provisions apply while individuals are still employed by the Board.

## I. Standing and Ripeness

We first consider the Board's objections based on standing and ripeness. We note there is "considerable overlap" between the two doctrines, especially where the objecting party's claim that the matter is not justiciable is "focused on arguments that the interest asserted by the petitioner is speculative, not concrete, or would require the court to offer an advisory opinion." *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013), *citing Rendell v. Pa. State Ethics Comm'n.*, 983 A.2d 708, 718 (Pa. 2009).

> Generally, the doctrine of standing is an inquiry into whether the petitioner filing suit has demonstrated aggrievement, by establishing "a substantial, direct and immediate interest in the outcome of the litigation." … In this sense, a challenge that a petitioner's interest in the outcome of the litigation is hypothetical may be pled either as determinative of standing or restyled as a ripeness concern although the allegations are essentially the same. Standing and ripeness are distinct concepts insofar as ripeness also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute.

*Id.* (internal citations omitted). However, we have further observed that "pure questions of law," such as those presented by petitioner in this case, "do not suffer generally from development defects and are particularly well-suited for pre-enforcement review." *Id.*, *citing Rendell*, 983 A.2d at 718 n.13.

Taking the Board's objections in order, we first consider whether petitioner has standing to bring her action challenging the restrictions of Section 1201(h), which the Board argues are post-employment restrictions, and as petitioner is still employed by the Board, she has not yet been aggrieved by their enforcement against her. The Board further argues petitioner knew about the post-employment rules when she took the position and did not challenge them until now; the Board claims this circumstance belies petitioner's claim her harm is "immediate." *See* Brief for Respondent at 12-13.

Petitioner, however, argues the plain language of Section 1201(h)(8) — stating no **employee** of the Board "may directly or indirectly solicit, request, suggest or recommend" to any gaming entity the employment of any person for a period of two years from the termination of the person's employment by the Board — binds current as well as former employees, and thus presents a direct, immediate and substantial impediment to her stated objective: to seek and accept employment in the private sector, in her chosen profession, in her particular area of expertise, *i.e.*, the gaming industry. *See* Brief for Petitioner at 10-14. Petitioner claims the restriction prevents her from looking for a job with a prospective employer, let alone accepting a position for two years after she leaves the Board. *See id.* She argues the General Assembly's omission of the word "former" from the statute's description of affected Board employees means the provision applies to her right now, and she is thus presently aggrieved, notwithstanding the Board's reference to the statutes as "post-employment" restrictions.

> We have described the requirements for standing as follows:
>
> In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action. In Pennsylvania, the requirement of standing is prudential in nature. . . .[T]he core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge.

*Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009) (internal citations and quotation marks omitted). "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *Id., citing In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003). Moreover, one has a substantial interest in the outcome of litigation if her interest surpasses that "of all

citizens in procuring obedience to the law." *Id.*, *quoting Hickson*, 821 A.2d at 1243. One has a direct interest in litigation "if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative." *Id.*, *quoting City of Phila. v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003).

As stated, petitioner is still employed by the Board as an attorney, and it is undisputed she is included among the employees restricted by the terms of the statute. We acknowledge the two-year period of restriction does not begin until after petitioner's employment with the Board is terminated, but we also note the rule's prohibition of petitioner's ability to legally seek employment in the gaming field before she actually leaves her job and becomes a former employee. Section 1201(h)(8) specifically prohibits petitioner, as an "employee of the Board," from soliciting, requesting, suggesting, or recommending employment with any applicant, licensed entity or an affiliate, intermediary, subsidiary or holding company. Petitioner alleges in her petition her "desire to pursue employment opportunities and to render professional legal services to clients outside the Gaming Board." Petition for Review at ¶23. Petitioner further avers she has been informed by persons and law firms who associate and represent gaming entities that the employment restrictions in the Gaming Act will inhibit her ability to seek and obtain employment with those potential employers, and the employment restrictions have a chilling effect on potential employers' willingness to hire a person in petitioner's position. *Id.* at ¶¶ 31-33.

Petitioner relies on *Robinson,* where this Court considered a physician's challenge to statutory restrictions (Act 13) regarding obtaining and sharing information

with other physicians about chemicals used in fracking operations. The physician alleged the restrictions improperly impeded his ability to diagnose and treat his patients by forcing him to choose between complying with the mandatory provisions of the statute and adhering to his ethical and legal duties to report findings in medical records and make those records available to patients and other medical professionals. *Robinson*, 83 A.3d at 923-24. Although the Commonwealth argued he did not have standing until he actually requested information restricted by the statute and that information was not supplied at all, or was supplied with restrictions interfering with his ability to provide proper medical care, or indicated the chemicals posed a public health hazard, this Court nonetheless held the physician's interest in the outcome of the litigation regarding constitutionality of the provisions was "neither remote nor speculative." *Id.* The Court recognized "the untenable and objectionable position in which Act 13" placed him:

> choosing between violating a Section 3222.1(b) confidentiality agreement and violating his legal and ethical obligations to treat a patient by accepted standards, or not taking a case and refusing a patient medical care. … Our existing jurisprudence permits pre-enforcement review of statutory provisions in cases in which petitioners must choose between equally unappealing options and where the third option, here refusing to provide medical services to a patient, is equally undesirable.

*Id.* at 924. Petitioner argues she similarly "must choose between equally unappealing options and where the third option . . . is equally undesirable." Brief for Petitioner at 17, *citing Robinson*, 83 A.3d at 924.

Petitioner also relies on *Shaulis v. Pennsylvania. State Ethics Commission*, 833 A.2d 123, 129 (Pa. 2003). Shaulis, an attorney with the Pennsylvania Department of Revenue, questioned provisions of the State Ethics Act which ostensibly applied to limit

her activities as an attorney after her public employment ended.[6]  The provision stated: "No former public official or public employee shall represent a person, with promised or actual compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body."  65 Pa.C.S. §1103(g).  After the State Ethics Commission confirmed Section 1103(g) applied to limit Shaulis's ability to practice in the relevant tribunals, this Court determined she was aggrieved because "if she took the actions therein proscribed, she would expose herself to the exact ethical investigation that she was attempting to forestall by seeking the advice of the Commission in the first place."  *Shaulis*, 833 A.2d at 691.  Petitioner claims this matter is similar to the pre-enforcement review in *Shaulis*, where the Court recognized as untenable the attorney's choices to either "violate the law and risk an ethics investigation or forgo practicing in Shaulis'[s] area of expertise."  Brief for Petitioner at 18, *citing Shaulis*, 833 A.2d 130.  Petitioner claims she likewise faces objectionable options to: (1) forego practicing law in her area of expertise; or (2) test the law by violating it and seeking employment as an attorney directly representing gaming entities, or with a law firm representing gaming entities as clients, with adverse consequences to both a potential future employer and petitioner herself.  *See* Brief for

---

[6] *Shaulis* addressed both the petitioner's standing to challenge the employment restrictions, as well as the constitutionality of those provisions.  A majority of the Court, including Chief Justice Cappy and Justices Castille and Eakin, joined the portion of Justice Newman's opinion holding Shaulis had standing.  *Shaulis*, 833 A.2d at 132.  In addition, a majority of the Court, comprised of Chief Justice Cappy and Justices Castille and Lamb, joined the portion of Justice Newman's opinion holding the Ethics Act provision unconstitutional.  *Id.*

Petitioner at 18; *see also, e.g.* Petition for Review at ¶¶ 31-33 (averring chilling effect of restrictions upon potential employers).

The Board argues petitioner is in a different position than the plaintiffs in either *Robinson* or *Shaulis*, and that those decisions do not confer standing upon her here. The Board avers that the choices the physician in *Robinson* faced are not "even closely analogous" to the choices petitioner claims to be facing. Brief for Respondent at 16.

Considering the facts alleged by petitioner, all taken as true, we conclude she is in the position that if she took the actions proscribed by Sections 1201(h)(8) and (13) and tried to obtain new employment in Pennsylvania's gaming industry, she would be in violation of the Act, exposing herself — and her potential employer — to adverse consequences, including damage to her reputation, and potentially instigating the loss of her new employer's gaming license. *See* 4 Pa.C.S. §1201(h)(13). Under the circumstances, we conclude petitioner has standing to challenge the constitutionality of the Gaming Act's employment restrictions.

We next consider the Board's preliminary objection alleging the matter is not yet ripe and petitioner's challenge is premature. The Board argues "declaratory relief is only appropriate where there is an actual controversy" and the "hypothetical future occurrence" of petitioner's departure from Board employment is speculative and not yet a proper subject for this Court's consideration. Brief for Respondent at 13-14. The Board asserts it is unknown how long petitioner will stay in her current job, and by the time she leaves that job the statute might be amended, or the subsequent employment petitioner might secure may not even be as an attorney or within the scope of the

statute; the Board claims the matter is therefore not ripe for decision. *Id.* at 14-15. The Board therefore claims petitioner's request for relief is premature.

Petitioner argues the question of the constitutionality of the Gaming Act employment restrictions is ripe for the same reasons stated in her argument on standing. We agree the challenge to petitioner's claim based on ripeness is "merely a restyling of the remoteness concern" addressed in our discussion on standing. *Robinson*, 83 A.3d at 920 (municipalities challenging Act 13 had standing and matter was ripe even before enforcement; they were aggrieved even by "threatened fundamental changes to esthetic and environmental values"). Thus, as with our consideration of the Board's preliminary objections based on standing, we consider the following allegations as true for purposes of determining the preliminary objection challenging ripeness: (1) petitioner wishes to leave her Board position and find another job in her specialty, although she is currently still employed by the Board; and (2) the statutory provisions facially restrict her current ability to seek future employment opportunities in her specialty, even though the details of her potential future departure from Board employment are not yet known. *See Bilt-Rite Contractors,* 866 A.2d at 272. (standard in determining preliminary objections is taking all petitioner's allegations as true).

In any event, additional factual development of petitioner's claims that might result from awaiting her actual application to or recruitment by a possible future gaming industry employer "is not likely to shed more light upon the constitutional question of law" she has presented. *Robinson*, 83 A.3d at 925. The substantive question regarding constitutionality of the employment restrictions in the Gaming Act is clearly a question of

law and, as we have stated, such questions are "particularly well-suited for pre-enforcement review." *Id.* at 917. Accordingly, the question presented by petitioner is ripe for review and the Board's preliminary objections as to standing and ripeness are therefore overruled.

## II. Constitutionality

In its preliminary objections based on the merits of petitioner's constitutional challenge, the Board argues petitioner failed to state a claim on which she is legally entitled to relief, because the employment restrictions at Sections 1201(h)(8) and (13) of the Gaming Act are constitutionally sound. We reiterate, in ruling on preliminary objections in the nature of a demurrer, a court's role is to accept all well-pleaded facts as true and determine if those facts are sufficient to permit the cause of action to continue. *See Bilt-Rite Contractors,* 866 A.2d at 272. The issue of the constitutionality of Sections 1201(h)(8) and (13) of the Gaming Act is a pure question of law, and no material factual dispute exists. Accordingly, with objections to standing and ripeness overruled, we proceed to determine the merits of petitioner's claim. *See Robinson*, 83 A.2d at 817.

Petitioner challenges the employment restrictions set forth in Sections 1201(h)(8) and (13) of the Gaming Act on the basis they conflict with this Court's authority under Article V, Section 10(c) of the Pennsylvania Constitution which states, in relevant part:

> **The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts**, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, **including the power to provide for** assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice

shall require, and for **admission to the bar and to practice law**, and the administration of all courts and supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. **All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.** . . .

*See* PA. CONST. art. V, §10(c) (emphasis added). Section 10(c) specifically prohibits the General Assembly from enacting laws that are "inconsistent with" the rules prescribed by this Court regarding the **practice of law**. Pursuant to its constitutional authority, this Court has established, *inter alia*, Rules of Professional Conduct, Pa.R.P.C., and Rules of Disciplinary Enforcement, Pa.R.D.E, pertaining to the supervision of attorneys who practice in the Commonwealth.

At the outset, we acknowledge petitioner's burden in challenging the constitutionality of a statute. "There is a presumption that lawfully enacted legislation is constitutional. Should the constitutionality of legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Commonwealth v. Stern*, 701 A.2d 568, 571 (Pa. 1997), *quoting Commonwealth v. Kohl*, 615 A.2d 308, 315 (Pa. 1992). *See also Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* 877 A.2d 383, 393 (Pa. 2005) (*PAGE*) (there is "strong presumption in the law that legislative enactments do not violate our Constitution"), *citing Pennsylvania Sch. Bds., Ass'n. v. Commonwealth, Ass'n. of Sch. Adm'rs.*, 805 A.2d 476, 479 (Pa. 2002). To be successful in her challenge, petitioner must overcome the presumption of constitutionality with a clear, palpable, and plain demonstration that the employment restrictions in the Gaming Act constitute an

infringement on this Court's constitutional power to prescribe rules governing the practice of law. *See* PA. CONST. art. V, §10(c). Additionally, in interpreting provisions of the Pennsylvania Constitution, "[o]ur ultimate touchstone is the actual language of the constitution itself." *Buckwalter v. Borough of Phoenixville*, 985 A.2d 728, 730 (Pa. 2009), *quoting Jubelirer v. Rendell*, 953 A.2d 514, 528 (Pa. 2008), *quoting Stilp v. Commonwealth*, 905 A.2d 918, 939 (Pa. 2006). The constitutional language must be interpreted as the average person would have understood it when it was adopted. *Stilp* 905 A.2d at 939. Moreover, "[a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *PAGE,* 877 A.2d at 393, *citing Commonwealth v. Hendrickson*, 724 A.2d 315, 317 (Pa. 1999). As explained below, we conclude petitioner has failed to overcome this presumption, and Sections 1201(h)(8) and (13) of the Gaming Act do not improperly invade the Supreme Court's authority set forth in Article V, Section 10.

Petitioner argues the Gaming Act contains the following unconstitutional restrictions: (1) regulating petitioner's practice of law for two years as it relates to her representation of Pennsylvania's gaming entities and their affiliates before the Gaming Board, as well as before any tribunal in any jurisdiction; (2) regulating petitioner's practice of law for two years as it relates to her ability to obtain employment with any law firm that represents gaming entities, both inside and outside the Commonwealth; and (3) inhibiting the ability of gaming entities to employ the legal talent of their choice. Brief for Petitioner at 26-27. Petitioner further avers these restrictions create an unlawful ban and regulate every aspect of her ability to practice law "as it relates to gaming entities or law firms that represent gaming entities." *See id.* at 27.

In making this argument, petitioner relies upon *Wajert v. State Ethics Comm'n*, 420 A.2d 439 (Pa. 1980), and *Shaulis, supra*. In *Wajert*, in a challenge brought by a former common pleas court judge, this Court examined a regulation in the Ethics Act, at 65 P.S. §403(e), providing "[n]o former official or public employee shall represent a person with or without compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body." *See Wajert*, 420 A.2d at 440, *quoting* 65 P.S. §403(e). Wajert argued the regulation improperly limited his ability to practice law after he left the bench. This Court held the provision applied to judges who had retired or resigned from the bench. *Id.* at 442. The *Wajert* Court further held the prohibition in the Ethics Act against "representing" a person in matters before the court targeted the practice of law, and thus improperly infringed on this Court's constitutional authority to govern the conduct of attorneys. *Id.* at 441-42.

As in her argument on standing and ripeness, petitioner also relies on *Shaulis* for her position on the merits that Sections 1201(h)(8) and (13) are unconstitutional. As stated, Shaulis challenged an Ethics Act provision — nearly identical to the restriction found to be unconstitutional twenty-three years earlier in *Wajert* — purporting to restrict former government employees from "represent[ing] a person, with promised or actual compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body." *Shaulis,* 833 A.2d at 125 n.1, 132. In striking down the provision, the Court explained "the state legislature is not the body vested with the power to enact such a restriction; that authority lies with this Court through the promulgation of the Pennsylvania Rules of Professional Conduct." *Id.* at 132. Petitioner argues the scope and duration of the employment restrictions in

Sections 1201(h)(8) and (13) of the Gaming Act exceed the post-employment restrictions found to be unconstitutional in *Wajert* and *Shaulis*, and thus are also unconstitutional.

The Board argues the Gaming Act's employment restrictions do not infringe on this Court's authority because, unlike in *Shaulis,* the post-employment regulation here restricts the conduct of **all** employees and is **not** specifically targeted at attorneys. The Board relies on *P.J.S. v. State Ethics Commission*, 723 A.2d 174 (Pa. 1999). In *P.J.S.*, this Court examined whether the State Ethics Commission was barred from investigating alleged ethical violations of an attorney under Sections 403(a) and (f) of the Ethics Act, pursuant to this Court's jurisdiction to regulate the professional and ethical conduct of attorneys. Sections 403(a) and (f) provided, in pertinent part: "No public official or public employee shall engage in conduct that constitutes a conflict of interest," and "No public official or public employee . . . or any business in which the person . . . is associated shall enter into any contract valued at $500 or more with the governmental body with which the public official or public employee is associated . . ." 65 P.S. §403(a) and (f). In determining the challenged Ethics Act provisions were not an unconstitutional violation of the separation of powers, the *P.J.S.* Court held "the jurisdiction of this [C]ourt is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys." *P.J.S.,* 723 A.2d at 178.

Our careful review of the relevant cases reveals employment restrictions do not infringe on this Court's authority to regulate the practice of law when they regulate the conduct of **all** employees, rather than attorneys only. *See Id.* (employment restriction

not unconstitutional because it applies to all employees, not just attorneys); *Maunus v. Commonwealth, State Ethics Comm'n*, 544 A.2d 1324, 1327 (Pa. 1988) (upholding provision of Ethics Act requiring financial disclosures of employees as constitutional because it applied to all employees, not only attorneys); *see also Shaulis,* 833 A.2d at 131 ("an employer, in this case the Commonwealth government, can proscribe conduct of its current employees, including attorneys, provided that the proscription is not targeted specifically at attorneys").  The employment restrictions set forth in Sections 1201(h)(8) and (13) of the Gaming Act clearly apply to **all** Board employees, including but not limited to attorneys, and thus do not present the constitutional problem identified in *Shaulis* and *Wajert*.[7]  Instead, our holdings in *P.J.S.* and *Maunus* apply to support our determination that the challenged provisions do not violate Article V, Section 10.

Moreover, in arguing Sections 1201(h)(8) and (13) of the Gaming Act are unconstitutional as an infringement on this Court's authority to regulate the practice of

---

[7]  We recognize the opinions in *Shaulis* and *Wajert* focused in part on whether the restrictions applied to current or former employees.  S*ee Shaulis,* 833 A.2d at 131-32; *Wajert,* 420 A.2d at 442.  The Gaming Act's restrictions at issue here apply to every "member, employee or independent contractor of the board," §1201(h)(8), and also to "an employee of the board," §1201(h)(13); current employees are affected, as well as former employees who are within the two-year restriction period.  However, as we explain in further detail *infra*, although the distinction between current and former employees is relevant for purposes of our discussion on standing and ripeness, it is not critical to our determination of the merits of the constitutional question, where the validity of the restriction depends primarily upon whether it purports to regulate the practice of law or not.  *See P.J.S., supra*; *see also Shaulis*, 833 A.2d at 136 n.2 (status as former employee should not control determination of restriction's validity) (Saylor, J., dissenting).

law, petitioner does not argue the restrictions apply exclusively to attorneys, nor does she dispute the provisions apply to all employees equally. Instead, petitioner attempts to analogize the employment restrictions in the Gaming Act to those held unconstitutional in *Wajert* and *Shaulis* by arguing the Gaming Act restrictions are unconstitutional as applied to attorneys. Petitioner essentially seeks an exemption from restrictions designed to apply to all employees based on her status as an attorney. We hold the argument fails. *P.J.S.,* 723 A.2d at 178. In both *Wajert* and *Shaulis,* this Court specifically found the prohibitions in the Ethics Act were unconstitutional because they specifically targeted attorneys, noting the provision prevented a former government employee from "**representing**" individuals before their government employer. *See Shaulis* 833 A.2d at 132 (Section 1103(g) of the Ethics Act is unconstitutional because it "targets the practice of law") (citations omitted); *see also Wajert*, 420 A.2d at 441 (statute unconstitutional as it applied to restrict practice of law by former judges). However, as stated, the employment restrictions in the Gaming Act are not directed at attorneys exclusively, but rather **all** employees of the Board.[8] The impact of the

_____

[8] The intended effect of these limited restrictions is obvious, and based on a sound and salutary public policy: to prevent conflicts of interest, or appearances thereof, in a historically controversial industry, by restricting current Board employees of all kinds from using their special contacts and insider expertise as a springboard to other employment opportunities in the field, at least for a closely circumscribed period of time. *See, e.g.*, Brief for Respondent at 18, *quoting Pennsylvania Senate Journal*, 2009 Reg. Sess. No. 52 at 871 ("[T]he Gaming Industry brings unique difficulties along with its legalization and operation in Pennsylvania, it appears to be an industry where it is not out of bounds for the legislature to require all former government employees (attorneys included) to have restrictions in place to 'prevent corruption and malfeasance and to insure public confidence.'"); *see also Pennsylvania Senate Journal*, 2009 Reg. Sess. (…continued)

employment restrictions on attorneys is real, as we recognized in our discussion of standing and ripeness, but regulation of the practice of law is not the goal of the legislation, unlike the provisions directed at attorneys, and held unconstitutional in *Shaulis* and *Wajert*. As such, this Court's authority over attorneys is not infringed by the Gaming Act's employment restrictions applicable to all employees, only some of whom

(continued…)

No. 52 at 872 (General Assembly noted purpose of 2010 Amendments, which extended duration of Gaming Act's employment restrictions, was to address "revolving door" issues created by comings and goings of Board employees). *Cf. Shaulis*, 833 A.2d at 136 (Saylor, J., dissenting) (employment restriction intended to "prevent pernicious practices and the appearance of impropriety, thereby strengthening public confidence in government by assuring its constituents of the impartiality and honesty of its public officials"). Such restrictions are not novel and can also be found in other industries where employees are privy to information and knowledge which could lead to an appearance of a conflict of interest in their field post-employment. *See, e.g.*, *In re Calder*, 135 A.2d 1062, 1072-73 (Pa. Super. 2016) (denying school police officer private detective license because use of limited police powers for private business constitutes appearance of impropriety and conflict of interest). The restrictions are thus intended to prevent the problematic "revolving door" of employees coming and going from the Gaming Board and do not unconstitutionally regulate the practice of law — either by intent or application.

In any event, petitioner herself acknowledges the limited nature of the employment restrictions, which apply only to her ability to practice law "as it relates to gaming entities or law firms that represent gaming entities." Brief for Petitioner at 27. Petitioner is not completely prohibited from practicing law by Sections 1201(h)(8) and (13). Rather, the restrictions effectuate the legislative intent of avoiding conflicts of interest by preventing petitioner from working for a distinct subsection of clients within this Commonwealth and before the Gaming Board, where she has special "insider" knowledge. Although the perceived severity of the restriction (or lack thereof) does not bear directly upon our constitutional analysis, we simply note petitioner is not prevented from obtaining new employment in the gaming industry in another jurisdiction, or remaining in Pennsylvania to practice law in practice areas other than gaming for two years.

are attorneys. *See P.J.S.*, 723 A.2d at 178 (relying on *Maunus* and noting this Court has declined to find its "exclusive jurisdiction over the professional and ethical conduct of all attorneys was infringed by the imposition of workplace regulations on persons who also happened to be attorneys"); *Maunus*, 544 A.2d at 1327 (there is "no basis upon which to conclude that . . . employees of a state agency are entitled to an exemption from [statutory] requirements simply because they are attorneys").

In determining whether the Board's restrictions in this case are valid, Justice Wecht would focus on whether the restriction applies to current or former employees, some of whom happen to be attorneys. The dissent concludes if a restriction applies to former attorney-employees — regardless of whether it is even aimed at the practice of law — that restriction automatically infringes upon this Court's constitutional authority. The inevitable result of this interpretation is to create an attorney-only immunity from any regulation imposed by any entity or institution other than this Court, on the basis of our constitutional authority; attorneys thus attain a special privilege to escape otherwise applicable laws protecting against conflicts of interest. *See* Concurring and Dissenting Slip Op. at 5 (Wecht, J.) (stating any restriction upon attorneys, even if lawyers represent a small percentage of the larger workforce that is restricted, impermissibly infringes on this Court's supervisory authority and is thus unconstitutional).

In finding the current/former employee distinction should be the critical inquiry in our analysis, the dissent ignores the clear holdings of this Court's decisions in *P.J.S.* and *Maunus*, which specifically and intentionally declined to find regulations unconstitutional when they were aimed at all persons, some of whom happened to be attorneys. *See P.J.S.* 723 A.2d at 178 ("jurisdiction of this [C]ourt is not infringed when

a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys"); *Maunus*, 544 A.2d at 1327-28 (finding no basis to conclude employees of state agency are exempt from complying with Ethics Act simply because of status as attorneys). A myopic focus on the current/former employee distinction necessarily relies on the *Shaulis* Court's inaccurate description of prior case law, and overlooks the actual holdings in both *Shaulis* and *Wajert* that the challenged Ethics Act restrictions were impermissible because they specifically targeted attorneys and the practice of law. *Shaulis*, 833 A.2d at 131; *Wajert,* 420 A.2d 442. The fact the Ethics Act restrictions applied only after the attorney left government employment was not dispositive, but merely highlighted the restrictions' effect of regulating the practice of law at all times in those instances. Conversely, a careful examination of the restrictions analyzed in *P.J.S.* and *Maunus* demonstrates they applied to all individuals subject to the Ethics Act, and were **not** specifically targeted at attorneys or the practice of law; the restrictions thus passed constitutional muster.

In *P.J.S.,* the plaintiff-attorney challenged the jurisdiction of the Ethics Commission to investigate an alleged conflict of interest arising out of his public employment as the city solicitor for the City of Erie while simultaneously maintaining a private practice and, in that private practice, being hired by the City's insurer to defend the City in a civil lawsuit. *P.J.S.,* 723 A.2d at 175. In analyzing whether the provisions of the Ethics Act which prohibited the attorney's conduct violated Article V, Section 10(c) of the Pennsylvania Constitution, this Court did not consider or even mention whether the restrictions applied to him as a current or former public employee; rather, the analysis turned on whether the regulation was targeted exclusively at attorneys and the

practice of law. This Court specifically held our jurisdiction "is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys." *Id.* at 178. Thus, the ethics restriction withstood challenge not because it applied only to **current** employees, but because it applied to **all** employees, and not just lawyers. Moreover, although the restriction arguably did affect the plaintiff's practice of law, it was upheld because it applied equally to all public employees of the City of Erie.

Similarly, in *Maunus*, the attorney-plaintiffs challenged regulations in the Ethics Act requiring all public employees to disclose financial interests, claiming the regulations violated Article V, Section 10(c). In finding the regulations were constitutionally sound and applicable to the lawyer-employees, the *Maunus* Court did not consider their status as current employees (although they unquestionably were), but instead focused on whether the rule infringed on their practice of law, noting there is "no basis upon which to conclude . . . employees of a state agency are entitled to an exemption from [regulations] simply because they are attorneys." *Maunus*, 544 A.2d at 1327.

Moreover, even in *Shaulis* and *Wajert*, which facially involved "former" public employees, the restrictions were actually problematic because they were aimed at individuals who might **represent** a person before the government body by which they were previously employed; the restrictions were implicitly directed only at attorneys and their practice of law. *Shaulis*, 833 A.2d at 124 n.1, *citing* 65 Pa.C.S. §1103(g); *Wajert*, 420 A.2d at 440, *citing* 65 P.S. §403(e). The distinction between current and former

employees was not, as a practical matter, dispositive in those cases, and is not dispositive here.[9]

Nevertheless, the dissent views these cases as directing that only current attorney-employees may be constitutionally restricted in their practice of law. *See* Concurring and Dissenting Opinion at 5 (Wecht, J.) ("I believe the current/former distinction is sufficient to dispose of the instant matter"). It is inexplicable that a regulation could pass constitutional muster when applied to current attorney-employees, yet suddenly become unconstitutional at the moment the attorney leaves that employment and moves on to something else. Such an interpretation would signal an abdication of our constitutional authority over "currently" employed attorneys, while providing immunity to those same attorneys from any applicable restrictions once they are "former employees." The answer to the query before this Court cannot logically depend on an individual's status as a current or former employee, but rather on whether

---

[9] The *Shaulis* Court explained its use of a current/former employee distinction as follows: "we refused to overrule *Wajert* in *Maunus*, indicating the *Maunus-P.J.S.* line of cases presumes the existence of *Wajert*." *Shaulis*, 833 A.2d 132. It appears this proclamation unnecessarily overstated the *Maunus* Court's constitutional analysis with respect to *Wajert*; although *Maunus* did not overrule *Wajert*, there was no call by the litigants in *Maunus* to do so. Instead, the *Maunus* Court distinguished *Wajert* on the facts, noting the issue in *Maunus* was "not within the category of cases which have presented the factual predicate for concluding that our jurisdiction over the courts of Pennsylvania and its officers has been unconstitutionally usurped by the legislature." *Maunus*, 544 A.2d at 1328. The inclusion of *Wajert* in a string-cite list of distinguishable cases is the only citation to *Wajert* in *Maunus*; in holding the regulations at issue were constitutional, the *Maunus* Court simply did not engage in any analysis regarding the status of the attorney-plaintiffs as current or former employees. Thus, a careful reading reveals the *Shaulis* Court's description of the prior case law was simply inaccurate.

the restriction actually infringes on this Court's power to supervise the practice of law. To the extent language in *Shaulis* suggests the crux of the matter is this red herring current/former employee distinction, we disavow it, and hold instead the decisive inquiry is whether the restriction invades this Court's authority by attempting to regulate the practice of law, at any time.[10]

Moreover, as a practical matter, it was not the employers that sought to direct and control the actions of the attorney-plaintiffs in *P.J.S.* and *Maunus* but an independent agency — the Ethics Commission. *See Maunus*, 544 A.2d at 1324 (Ethics Commission, not employer, Pennsylvania Liquor Control Board, enforced sections of Ethics Act against employee attorneys); *P.J.S.,* 723 A.2d at 175 (Ethics Commission, not employer City of Erie, investigated and enforced sections of Ethics Act against employee attorney). Likewise, the Gaming Board's restrictions on both current and former employees are meant to be executed at least in part by the Ethics Commission. *See* 4 Pa.C.S. §1201(h)(14) ("The State Ethics Commission shall issue a written determination of whether a person is subject to paragraph (13) or (13.1) upon the written request of the person or the persons' employer or potential employer. . ."). Regardless of whether or not the affected attorney has left the Board's employ, it is not the Board which acts to guard against the attorney's unethical or unprofessional conduct.

---

[10] Our holding in this regard does not undermine the validity of *Wajert* and *Shaulis* to the extent they correctly focused on the fact the challenged regulations were specifically targeted at attorneys only. *Shaulis*, 833 A.2d at 131; *Wajert*, 420 A.2d 442.

Further, a thorough examination of the caselaw applying Article V, Section 10(c) of the Pennsylvania Constitution reveals that *Shaulis* was the first — and only — case to articulate the current/former employee distinction relied upon by our learned colleagues in dissent. While we recognize and acknowledge the value of *Shaulis* as precedent as well as the principle of *stare decisis,* we also acknowledge that *stare decisis* "is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." *Stilp*, 905 A.2d at 967, *citing Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709, 720 (Pa. 1978) ("[T]he doctrine of *stare decisis* is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish.").

Sections 1208(h)(8) and (13) of the Gaming Act include restrictions applicable to *both* current and former employees of the Gaming Board. Accordingly, the matter *sub judice* presents an opportunity for this Court to more closely examine the current/former distinction pronounced for the first time by the *Shaulis* Court*.* In effecting that examination, we come to the unavoidable conclusion that the current/former distinction cannot be the determinative test in deciding whether a restriction infringes on this Court's Constitutional authority to oversee the practice of law. Holding, as the dissent articulates, that the employment status of an attorney is the seminal factor in deciding whether a restriction violates Article V, Section 10(c) of our Constitution will perpetuate the error articulated in *Shaulis*. It is regulation of the practice of law that Article V, Section 10(c) expressly places into this Court's jurisdiction, and only proscriptions which are inconsistent with this Court's rules violate that constitutional provision.

Accordingly, in examining Sections 1201(h)(8) and (13) of the Gaming Act, the operative constitutional question is whether the employment restrictions infringe on the **practice of law** in a manner inconsistent with this Court's constitutional power. Sections 1208(h)(8) and (13) of the Gaming Act provide restrictions aimed at **all** employees, including but not limited to attorneys, and restrict future professional activities and employment in the gaming industry, which includes but is not limited to the practice of law. More specifically, Section 1201(h)(8) prohibits any "**member, employee or independent contractor** of the board" from making solicitations, requests, solicitations or recommendations to any gaming board affiliate or licensed entity for two years after employment. 4 Pa.C.S. §1201 (h)(8) (emphasis added). In addition, Section 1201(h)(13) expressly applies to any "employee of the board whose duties substantially involve licensing, enforcement, development of law, promulgation of regulations or development of policy . . . **including** the executive director, bureau directors and attorneys," and restricts such "individuals" from, *inter alia*, accepting employment from various gaming entities or "appearing" before the Board. 4 Pa.C.S. §1201(h)(13). As the restrictions expressly include attorneys, among other individuals, and apply to all employees of the Board engaged in a wide array of activities, it is without question that the restrictions are not "specifically targeted" at attorneys. *But see Shaulis*, 833 A.2d at 131; *Wajert,* 420 A.2d 442. The Gaming Act restrictions therefore do not improperly infringe on this Court's authority to regulate the practice of law. *P.J.S.*, 723 A.2d at 178; *Maunus*, 544 A.2d at 1324.

Moreover, unlike the restrictions in *Wajert* and *Shaulis*, which were found to improperly regulate the practice of law because they specifically prohibited a

government employee from "represent[ing]" an individual before government entities, the Gaming Board restrictions are broader, prohibiting all former employees from, in part, "appear[ing] before the board in a hearing or proceeding or participat[ing] in activity on behalf of any applicant, licensee, permittee. . ." 4 Pa.C.S. §1201(h)(13)(ii). Unlike a restriction on "representing," a restriction on making an "appear[ance]" does not necessarily implicate the acts of an attorney taken on behalf of a client, and therefore does not specifically target attorneys. In fact, Sections 1201(h)(8) and (13) of the Gaming Act broadly prohibit **all** individuals from several activities, which include appearing before the Board in capacities which do not implicate or involve the practice of law, for example, applying for licenses or permits from the Board, or appearing as a lay witness on behalf of an applicant before the Board.

We reject the argument our Article V, Section 10(c) jurisdiction mandates that attorneys may escape the employment restrictions of the Gaming Act — which are applicable to all employees in an effort to avoid conflicts of interest — simply because they are attorneys. *P.J.S*, 723 A.2d at 178. *Cf. Villani v. Seibert*, __ A.3d __, 2017 WL 1489048, at *13 (Pa. April 26, 2017) (this Court should not "*per se* immunize attorneys, as attorneys" from civil liability under the Dragonetti Act on the basis of Article V, Section 10(c)). Any other interpretation is ripe for abuse. For example, an attorney (like petitioner), now employed by the Gaming Board, would have the luxury of circumventing the restrictions applicable to all other employees and obtaining future employment with a private gaming entity — whether as an attorney or in some other capacity.

In his dissent, Justice Wecht submits any conflicts of interest the General Assembly might seek to regulate have already been addressed by this Court via the

Rules of Professional Conduct, specifically Rule 1.11, which applies to avert various conflicts of interest that may arise out of the practice of law by former government attorneys. *See* Concurring and Dissenting Opinion at 7-8 (Wecht, J.) (noting this Court has exercised its regulatory authority via the Rules of Professional Conduct which contain affirmative obligations to protect against conflicts of interest). However, Rule 1.11 is narrower in its application than the Gaming Act restrictions and clearly will not apply to protect against a conflict of interest created by the former Gaming Board attorney who goes to work in a non-attorney capacity for a gaming entity. This is precisely the kind of situation the challenged statute captures, and which the Rules of Professional Conduct do not.

Even if we were to assume the Disciplinary Board of the Court has the resources to discover and redress every potential conflict of interest that may arise in this context so as to enforce these Rules,[11] the language of Rule 1.11, which describes "Special

---

[11] The most recent annual report from The Disciplinary Board of the Supreme Court of Pennsylvania states that, as of December 31, 2015, there were 64,509 active paid attorneys and 10,951 inactive paid attorneys in the Commonwealth. *See* http://www.padisciplinaryboard.org/about/pdfs/2015-annual-report.pdf (last visited on Feb. 13, 2017) (providing Annual Report of Disciplinary Board). Pennsylvania Rule of Disciplinary Enforcement 219(d)(1)(ii) requires attorneys to provide the Disciplinary Board with a current office address, but compliance with that Rule does not provide the Disciplinary Board with an accurate picture of attorneys changing employers in order to effectively monitor any potential conflicts of interest; the number of attorneys changing addresses also reflects attorneys who change physical offices yet stay with the same employer, and attorneys who leave the practice of law altogether. *See* Pa.R.D.E. 219(d)(1)(ii) (requiring attorneys to pay annual fee and file a form containing "current e-mail, residence and office addresses of the attorney").

Conflicts of Interest for Former and Current Government Officers and Employees," clearly anticipates the need for and existence of statutory provisions which also apply to and control the conflicts of interest addressed in the rule. *See* Pa.R.P.C. 1.11(d) ("Except as law may otherwise expressly permit," a lawyer currently serving as a public officer or employee shall not engage in various activities); *see also id.*, note 1 (lawyer who has served or is currently serving as a public officer or employee subject to Rules including prohibition of conflicts of interest also "may be subject to statutes and government regulations regarding conflict of interest . . ."). And, as we have illustrated above, the reach of Rule 1.11 is narrower than Sections 1201(h)(8) and (13) of the Gaming Act because the Rules of Professional Conduct will not apply to prohibit an attorney from appearing before the Board in a non-attorney capacity, *e.g.,* as an applicant for a license or as a lay witness, and policing of conflicts by this Court as envisioned by the Rules is undermined if the Gaming Board attorney moves into a non-attorney position at a gaming entity. In the absence of the challenged statutes, the one-time lawyer/now-gaming executive may enjoy blanket protection from the consequences of conflicts because she is no longer practicing law, and therefore beyond the reach of the Rules.

Importantly, Article V, Section 10(c) itself does not state this Court's authority over the practice of law or its "power to prescribe general rules" is exclusive, but that exclusivity is expressed in case law as well as in the Rules promulgated by this Court in furtherance of its constitutional authority. *See, e.g.*, Pa.R.D.E. 103 ("The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of

the Constitution of Pennsylvania) . . . .").   The "exclusivity" of this Court's jurisdiction refers to the fact that no other entity **but this Court** has power over attorneys *qua* attorneys, that is, because of their status as attorneys.   *See P.J.S.,* 723 A.2d at 178 ("The jurisdiction of this court is exclusive in the sense that it applies equally to all members of the Bar of Pennsylvania.  The exclusive jurisdiction of this court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys.").

In other words, "[w]hat is contemplated by the exclusivity provision contained in Pa.R.D.E. 103 is that this Court is the only governmental body entitled to regulate and discipline the professional class of attorneys.   No other component of our state government may impose duties applicable to every attorney admitted to practice in the Commonwealth, nor may another Commonwealth entity admit to practice or discipline an attorney.   These prerogatives are within this Court's exclusive jurisdiction." *Maunus*, 544 A.2d 1326.  There can be no question the authority to supervise the practice of law in this Commonwealth lies in this Court's constitutional province, and we affirm the command in Article V, Section 10(c) that "all laws shall be suspended to the extent" they are inconsistent with our Rules.  But such exclusivity does not have the effect of preventing attorneys from being subject to other kinds of liability or judicial process. *See P.J.S.,* 723 A.2d 178 ("Although members of the Bar of Pennsylvania are uniformly subject to the professional and ethical standards imposed and regulated by this [C]ourt, they are not, by virtue of that membership exempt from all other professional and ethical regulations.").  In fact, the operative constitutional provision expressly acknowledges the General Assembly may enact laws on the subject of attorneys as long as they are not

"inconsistent with rules prescribed" pursuant to this Court's authority. PA. CONST. art. V, §10(c) ("All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions . . ."). *Cf. Villani, supra; Maritrans GP Inc. v. Pepper Hamilton & Scheetz*, 602 A.2d 1277, 1285 (Pa. 1992) ("Attorneys have always been held civilly liable for engaging in conduct violative of their fiduciary duties to clients, despite the existence of professional rules under which the attorneys could also have been disciplined.")

We conclude there is nothing to prevent attorneys from being subject to both the Rules of Professional Conduct promulgated by this Court under our constitutional authority, and consistent statutory provisions, such as the Gaming Act employment restrictions that apply to all employees of the Gaming Board. A holding that attorneys are subject to the Rules of Professional Conduct alone, and no other statutes or legal obligations simply by virtue of their status as attorneys, and without reference to whether the regulated activity constitutes the practice of law, would place attorneys in a special class immune to governance by any entity other than this Court. Taken to the extreme, such a holding would invalidate any number of civil and criminal statutes when they are applied to individuals who happen to be attorneys, and simply cannot be correct.

Accordingly, although we hold petitioner had standing to bring her challenge, and that challenge was ripe for our review, we hold on the merits that Sections 1201(h)(8) and (13) of the Gaming Act do not improperly regulate the practice of law in violation of Article V, Section 10 of the Pennsylvania Constitution. Therefore, the Board's

preliminary objections are overruled in part and sustained in part, and the petition for review is dismissed with prejudice.

Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer and Mundy join the opinion.

Justice Wecht files a concurring and dissenting opinion in which Justices Todd and Donohue join.