Astou Diop, Tanyita Henry, : 
and Awa Gaye, : 
               Petitioners : 
          : 
         v. :   No. 363 M.D. 2020
          :   Argued: December 16, 2021
Bureau of Professional and : 
Occupational Affairs, : 
State Board of Cosmetology : 
of The Commonwealth of : 
Pennsylvania, : 
              Respondents : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE LEAVITT                              FILED: March 3, 2022

       In this original jurisdiction action, Astou Diop, Tanyita Henry, and Awa Gaye (Petitioners) challenge the constitutionality of certain provisions of the statute commonly known as the Beauty Culture Law (Law),[2] which require a license to engage in the commercial practice of natural hair braiding. Petitioners challenge this regulatory regime both facially and as applied to them. Presently before this Court are the preliminary objections of the Bureau of Professional and Occupational Affairs (Bureau) and the State Board of Cosmetology of the Commonwealth of Pennsylvania (Board) (collectively, Respondents). Respondents ask the Court to (1) dismiss the as-applied constitutional claims of Tanyita Henry for lack of standing; (2) dismiss Petitioners' facial substantive due process challenge as legally

_____

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§507-527.

insufficient;[3] and (3) dismiss Petitioners' as-applied and facial equal protection claims as legally insufficient.

## I. Procedural History

On June 18, 2020, Petitioners filed a petition for review in the nature of a complaint for declaratory and injunctive relief, alleging that the provisions of the Law and associated regulations requiring them to obtain a license to engage in commercial natural hair braiding violate their substantive due process right to pursue their chosen occupation under Article I, Section 1 of the Pennsylvania Constitution. PA. CONST. art. I, §1.[4] On August 5, 2020, Respondents filed an answer to the petition for review, denying some factual allegations therein and asserting that pending legislation in the General Assembly would address Petitioners' concerns.[5] Respondents also asserted that Petitioners failed to plead facts to show an actual case in controversy and failed to join all indispensable parties, *i.e.*, all individuals who hold a natural hair braiding license and whose property interest in that license would be affected were this Court to declare the licensing scheme unconstitutional. In a

---

[3] Respondents raise an additional objection that Petitioners have failed to "join all active, inactive, and suspended license holders whose rights will be directly affected if the Court provides the declaratory relief sought." Respondents' Brief at 9. Respondents ask the Court to address this objection only if it allows Petitioners' facial substantive due process challenge to proceed.

[4] It states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1.

[5] Respondents ask the Court to take judicial notice of Senate Bill 60, 205th General Assembly (2021), which will deregulate the practice of natural hair braiding. Senate Bill 60 is currently pending before the Senate Consumer Protection and Professional Licensure Committee. The history of the bill is available on the General Assembly's website at the following address: https://www.legis.state.pa.us/cfdocs/billinfo/bill_history.cfm?syear=2021&sind=0&body=S&type=B&bn=60 (last visited March 2, 2022).

reply to new matter filed August 18, 2020, Petitioners denied the allegations in Respondents' answer.

In August 2020, the parties began to engage in discovery. On April 16, 2021, Petitioners, with Respondents' consent, filed their first amended petition for review. In a new Count II, Petitioners asserted that the licensing requirements for natural hair braiders violate the equal protection guarantee in Article I, Section 26 of the Pennsylvania Constitution.[6] The first amended petition also clarified that, in Counts I and II, Petitioners were challenging the Law both facially and as applied to them.

On May 7, 2021, Respondents filed preliminary objections to the first amended petition for review. On May 18, 2021, based on Respondents' preliminary objections and pursuant to Pennsylvania Rule of Civil Procedure 1028(c)(1),[7] Petitioners filed a second amended petition for review (Petition) as of course. On June 15, 2021, Respondents filed new preliminary objections to the Petition. On July 6, 2021, Petitioners filed an answer in opposition to the preliminary objections.

## II. Petition for Review

### A. Factual Averments

The Petition avers the following facts. Natural hair braiding is a method of haircare with historical and cultural roots in African and African American communities. Petition ¶¶2, 19-20. The practice of natural hair braiding "refers to

---

[6] It states: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, §26.

[7] The rules states: "A party may file an amended pleading as of course within [thirty] days after service of a copy of preliminary objections. If a party has filed an amended pleading as of course, the preliminary objections to the original pleading shall be deemed moot." PA.R.CIV.P. 1028(c)(1), PA.R.A.P. 1516(b).

3

twisting, wrapping, weaving, extending, locking or braiding of hair" by hand and, at times, with the use of simple tools, such as clips, combs and hairpins. *Id*. ¶¶11-12.[8] Natural hair braiding incorporates both traditional and modern styling techniques, and sometimes includes the use of extensions, decorative beads and other hair accessories. *Id*. ¶¶13-14. Natural hair braiding does not involve the use of dyes, reactive chemicals or other preparations to alter the color of hair or to straighten, curl or alter the structure of hair. *Id*. ¶15. It does not require the use of heated tools, such as a curling iron or flat iron. *Id*. ¶28. It is dramatically different from general hair braiding and other types of hairstyling. *Id*. ¶21. The hair braiding practiced by Petitioners is "complex and labor intensive," often taking multiple hours or even days to complete. *Id*. Persons of African descent regularly learn to braid hair as children or teens, and "[f]or many people the choice of natural hair braiding over other styles is as much a cultural statement and expression of self-identity as it is an aesthetic concern." *Id*. ¶¶20, 22.

---

[8] Section 1 of the Law defines "natural hair braiding" as

> [t]he practice of utilizing techniques that result in tension on hair roots of individuals, such as twisting, wrapping, weaving, extending, locking or braiding of the hair. The term does not include the application of dyes, reactive chemicals or other preparations to alter the color or to straighten, curl or alter the structure of hair.

63 P.S. §507. The Board's regulations define "natural hair braiding" as:

> (i) The practice of utilizing techniques that result in tension on hair roots of individuals, such as twisting, wrapping, weaving, extending, locking or braiding of the hair. The term includes the application of heat by the use of a straightening comb, ceramic iron or similar appliance to prepare the hair for manipulation.
>
> (ii) The term does not include cutting the hair or the application of dyes, reactive chemicals or other preparations to alter the color or to straighten, curl or alter the structure of hair.

49 Pa. Code §7.1. Petitioners assert that the definition in the regulation includes acts not typically performed by natural hair braiders. Petition ¶211.

In 2004, this Court held that natural hair braiding falls within the Law's definition of "cosmetology" and, thus, the Board was authorized to require hair braiders to be licensed as cosmetologists. Petition ¶51 (citing *Diwara v. State Board of Cosmetology*, 852 A.2d 1279, 1283, 1286 (Pa. Cmwlth. 2004)). In 2006, the General Assembly amended the Law to create a limited license for natural hair braiding that requires 300 hours of training and a license examination. *Id.* ¶¶52, 54; *see* Section 5(b)(3) of the Law, 63 P.S. §511(b)(3).[9] Relatedly, the Board's regulations recommend that 125 hours of the required instruction, or 42% of the total, cover "[c]ognitive and manipulative skills related to natural hair braiding." *Id.* ¶¶191-92 (quoting 49 Pa. Code §7.129(f)).[10] Respondents are charged with

---

[9] Section 5(b)(3)(i) of the Law states:

> (b) The board shall issue the following limited licenses to qualified applicants:
>
> * * *
>
> (3)(i) Natural hair braiding license, which shall authorize the holder to engage in the practice of natural hair braiding only. An applicant for a natural hair braiding license shall have completed three hundred hours of board-approved subjects relating to sanitation, scalp care, anatomy and natural hair braiding in a cosmetology school and passed an examination limited to that practice. Licensed natural hair braiders may operate a salon limited to that license. An applicant may be permitted to take a written examination upon completion of at least two hundred fifty hours of instruction in natural hair braiding in a licensed school of cosmetology. The examination shall include both theoretical and procedural skill questions as prescribed by the board. Any applicant may apply and is eligible for licensure upon (A) passing the written examination, (B) completion of the required three hundred hours of board-approved subjects, and (C) certification by a duly licensed school of satisfactory completion of all program requirements.

63 P.S. §511(b)(3)(i).

[10] The regulation provides, in relevant part:

> (f) A school's natural hair braiding curriculum, excluding electives, must comprise a minimum of 300 hours and cover the following subjects; the accompanying breakdown of hours by subjects is recommended:
>
> NATURAL HAIR BRAIDING COURSE OUTLINE

5

enforcing the educational and licensing requirements for natural hair braiding. *Id.* ¶55.

The Petition alleges that the Law's educational and licensing requirements are onerous because few Pennsylvania cosmetology schools offer a 300-hour course specific to natural hair braiding. Petition ¶¶145-55. Further, their instruction on "cognitive and instructional skills related to natural hair braiding" approved by the Board is only tangentially related to natural hair braiding. *Id.* ¶194. Board-approved instruction focuses on braiding of straight, European style hair and the braiding of shampooed and straightened circle shape hair, neither of which relate to natural hair braiding. *Id.* ¶195. Moreover, the instruction on "professional practices" and "sciences" is only tangentially related to natural hair braiding because it includes training on shampoos, chemical treatments and hair straightening tools. *Id.* ¶196.

The statutorily mandated natural hair braiding examination must "include both theoretical and procedural skill questions as prescribed by the Board." Petition ¶197 (quoting Section 5(b)(3)(i) of the Law, 63 P.S. §511(b)(3)(i)). Petitioners allege that natural hair braiding techniques comprise a small quantity, if any, of the computer administered examination required to obtain a natural hair braiding license. *Id.* ¶201. The examination tests on multiple subjects that are not

|  | Recommended Hours |
|---|---|
| Professional practices, including sanitation | 50 |
| Sciences, including scalp care and anatomy | 125 |
| Cognitive and manipulative skills related to natural hair braiding | 125 |
|  | Total 300 |

49 Pa. Code §7.129(f).

6

relevant to natural hair braiding, including storage of chemical products, use of thermal appliances, shampooing and scalp treatments. *Id*. ¶¶202, 206.

Petitioners further allege that in a 2017 executive order, Governor Tom Wolf directed the Bureau to identify overly broad or burdensome licensing requirements. Petition ¶¶56-63. On June 11, 2018, the Bureau issued a report (Bureau Report) finding that overburdensome licensing requirements can be particularly harmful to, *inter alia*, immigrant communities, and identifying Pennsylvania as "only one of two states in the regional comparison group of 12 states and only one of 15 states nationwide" that impose licensure requirements on natural hair braiders. *Id*. ¶¶67, 70. The Bureau Report identified no public health or safety justification for the 300 hours of training required under the Law to obtain a limited license for natural hair braiding, nor did it identify any instance of discipline imposed for practicing natural hair braiding without a license. *Id*. ¶¶74, 76. Three days after issuance of the Bureau Report, Governor Wolf recommended the elimination of the natural hair braiding limited license because no forms of registration, certification, or examination for natural hair braiders are necessary to protect public health and safety. *Id*. ¶¶77-81. Ian Harlow, Commissioner of Professional and Occupational Affairs, publicly concurred in the Governor's recommendation and called for the deregulation of natural hair braiders. *Id*. ¶82. Commissioner Harlow identified only a single instance, from 2003, of discipline imposed for practicing natural hair braiding without a license. He also stated that the Bureau has never received a consumer complaint arising from natural hair braiding. *Id*. ¶84.

Petitioners are skilled practitioners of natural hair braiding. Petition ¶2. Astou Diop learned braiding by practicing on family, friends and herself and considers braiding an essential part of her cultural identity. *Id*. ¶112. She is currently

7

the manager of a natural hair braiding shop in Philadelphia. *Id.* ¶109. She has had difficulty finding braiders to meet the demand for her shop's services because most skilled braiders in Pennsylvania do not have a license. *Id.* ¶121. Diop has considered securing a limited license for herself but the curriculum at the cosmetology school she visited taught techniques that are not relevant to natural hair braiding. *Id.* ¶125.

Tanyita Henry learned how to braid hair as a child and, as an adult, braids her own hair, her daughter's hair and occasionally the hair of other family members and friends. *Id.* ¶¶133-34. She does not currently braid hair for compensation and, as of the date of the Petition, was laid off from her work as a surgical technician. *Id.* ¶¶135, 137. She aspires to open a natural hair braiding salon and provide braiding services for members of her community in Bellefonte, Pennsylvania. *Id.* ¶139. Henry alleges that but for the Law's education and testing requirements, she would begin to braid hair for compensation. *Id.* ¶138.

Henry investigated educational opportunities in her area and learned that a cosmetology school located five miles from her home does not offer the Board-mandated 300-hour course in natural hair braiding. *Id.* ¶146. Henry would have to take the full 1,250-hour cosmetology program, which Petitioners allege includes little, if any, instruction on natural hair braiding and costs $10,860. *Id.* ¶147. She encountered the same issue with the next closest school that is 50 miles from Bellefonte. *Id.* ¶149. A third cosmetology school in Harrisburg, which is 90 miles from her home, advertises the 300-hour course in natural hair braiding but does not actually offer it due to insufficient demand. *Id.* ¶151. Henry enrolled in a full 1,250-hour cosmetology program several years ago but withdrew because only a few hours of training were directed to natural hair braiding. *Id.* ¶156. Henry has avoided obtaining a cosmetology license because of her past experience in a full cosmetology

8

program, the difficulties in finding childcare and in home-schooling her children while enrolled in such a program, and the significant additional cost of tuition. *Id.* ¶161.

Awa Gaye was born in the Republic of Senegal, where she learned and became an expert in natural hair braiding techniques. Petition ¶¶162, 165. She and her husband emigrated to the United States in 2007 and settled in New Jersey, where Gaye obtained a cosmetology license and began working as a natural hair braider. *Id.* ¶¶163, 168, 174. After working for four years in New Jersey, Gaye opened a natural hair braiding shop in Philadelphia. *Id.* ¶170. She chose Philadelphia because of its large West African population, and her shop now serves as a cultural meeting place for West African and African American women. *Id.* ¶172. Gaye's shop employs four additional braiders, some of whom cannot read or write, which prevents them from attending a school to secure a license or taking a licensing examination. *Id.* ¶¶175-76. Gaye has had difficulty finding braiders to meet the demand for her shop's services because most skilled braiders in Pennsylvania do not have a license. *Id.* ¶177.

The Petition alleges that the Board has issued and continues to issue warnings, notices of violation, cease and desist letters and administrative penalties and fines to individual hair braiders for the unlicensed practice of hair braiding and to salons that employ unlicensed braiders. Petition ¶¶222-23. Enforcement of the Commonwealth's licensing requirements has the effect of discouraging businesses from hiring unlicensed hair braiders and, as a result, braiding businesses are unable to grow or meet the consumer demand for braiding services. *Id.* ¶225. Enforcement of the Commonwealth's licensing requirements against individual hair braiders threatens their ability to earn a living. *Id.* ¶226.

9

Petitioners aver that they are experts at natural hair braiding and have devoted substantial time and effort to developing their craft and businesses. Petition ¶230. They would have to stop working to obtain a natural hair braiding license and cannot afford to spend thousands of dollars on tuition at a cosmetology school, where they would either learn skills they have already mastered or skills that do not relate to natural hair braiding. *Id.* ¶231. Petitioners assert that the Board's enforcement of the Law and regulations forces them to risk fines and imprisonment every time they braid hair for compensation or, in the case of Gaye, employ unlicensed natural hair braiders. *Id.* ¶¶232, 235. The Board's actions deprive Petitioners and other braiders of the ability to pursue their calling. *Id.* ¶237. Gaye and Diop are unable to reliably offer hair braiding services to their customers without employing unlicensed braiders, and they cannot expand their businesses because they cannot find qualified, licensed braiders to meet demand. *Id.* ¶244.

## B. Constitutional Claims

Based on the foregoing factual averments, Count I of the Petition asserts that the Law's licensing requirements for natural hair braiders, as applied to Petitioners, violates Petitioners' substantive due process rights as guaranteed in Article I, Section 1 of the Pennsylvania Constitution. Petition ¶¶252-56. Petitioners clarify that their Count I substantive due process challenge is also a facial challenge to the Law's licensing requirements. *Id.* at 39-40. Specifically, they assert that the Law's licensing requirements bear no substantial relationship to the protection of public health, safety, welfare, or any other legitimate government interest, and that requiring a license for natural hair braiding serves only illegitimate economic protectionism. *Id.* ¶¶257-65. Petitioners contend that they do not have an adequate remedy for the irreparable harm to their constitutional rights other than an injunction

10

to bar Respondents from enforcing the Law's requirement that natural hair braiders be licensed. *Id.* ¶266.

Count II of the Petition asserts that the Law's licensing requirements for natural hair braiders violate the equal protection guarantee in Article I, Section 26 of the Pennsylvania Constitution, both facially and as applied to Petitioners. Petition ¶¶268-81. In support, Petitioners assert that the Law treats similarly situated persons differently by allowing licensed cosmetologists, who lack any training in natural hair braiding, to provide the service, while denying experienced, but unlicensed, natural hair braiders the same right. *Id.* ¶¶277-80.

Petitioners seek a declaration from this Court under the Declaratory Judgments Act[11] that the licensing requirements of the Law pertaining to natural hair braiding are unconstitutional. They further request that this Court permanently enjoin Respondents from enforcing the licensing requirements and award attorney fees to Petitioners.

### III. Preliminary Objections

In their preliminary objections, Respondents first demur to Tanyita Henry's standing to assert the as-applied challenges to the Law's licensing requirements in Counts I and II. Respondents argue that because Henry does not currently practice natural hair braiding commercially, the Law's licensing requirements do not apply to her and, thus, she is not aggrieved. Second, Respondents demur to Petitioners' facial substantive due process challenge in Count I on the basis that it is legally insufficient. Respondents argue that Petitioners have failed to allege facts to satisfy their heavy burden of showing that the Law, on its face, clearly, palpably, and plainly violates the Pennsylvania Constitution. Third,

---

[11] 42 Pa. C.S. §§7531-7541.

11

Respondents demur to the facial challenge in Count I based on Petitioners' failure to join all active, inactive and suspended holders of a limited natural hair braiding license, who are indispensable parties because their property rights in their licenses will be directly affected by a judgment in favor of Petitioners.[12] Fourth, Respondents demur to the as-applied and facial equal protection challenges in Count II. Respondents argue that Count II is legally insufficient because the facts alleged in the Petition do not support Petitioners' premise that they are similarly situated to licensed cosmetologists.

## IV. Scope and Standard of Review

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). This Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

---

[12] Respondents condition their third objection on the Court overruling their preliminary objection to Count I, stating that "[i]f Petitioners' facial challenge to the license requirements is permitted to proceed, Respondents request the Court sustain their third objection and issue an order requiring Petitioners to join all active, inactive, and suspended license holders whose rights will be directly affected if the Court provides the declaratory relief sought." Amended Brief in Support of Preliminary Objections, filed 9/1/2021, at 25-26.

## V. Discussion

### A. Standing of Tanyita Henry

In their first preliminary objection, Respondents argue that Henry lacks standing to challenge the constitutionality of the Law's licensing requirements as applied to her because she does not currently practice natural hair braiding commercially. Thus, because the Law's licensing requirements do not apply to her, she is not aggrieved in any way.[13]

In response, Petitioners argue that Respondents did not object to Henry's standing at the earliest possible opportunity, *i.e.*, in their answer to the original petition for review, and, thus, have waived this objection. Second, Petitioners argue that this Court need not consider a challenge to one petitioner's standing when the other petitioners undisputedly have standing to bring the same claims. Third, Petitioners assert that precedent supports allowing Henry to bring a pre-enforcement constitutional challenge.

At the outset, we disagree with Petitioners' argument that Respondents waived their right to object to Henry's standing. Petitioners correctly point out that, pursuant to Pennsylvania Rule of Civil Procedure 1032(a),[14] a party waives all

---

[13] Respondents do not challenge the standing of Diop or Gaye to challenge the Law as applied to them. Nor do they challenge Henry's standing to pursue a facial constitutional challenge.

[14] Rule 1032(a) states:

> (a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b) [(relating to the court's lack of subject matter jurisdiction or the failure to join an indispensable party)], the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

PA.R.CIV.P. 1032(a).

objections that are not presented by preliminary objection, answer or reply. Further, "[i]t is well-settled that standing is not a jurisdictional issue and may be waived if not objected to at the earliest possible opportunity." *Thompson v. Zoning Hearing Board of Horsham Township*, 963 A.2d 622, 625 n.6 (Pa. Cmwlth. 2009). We reject Petitioners' premise that Respondents' earliest opportunity to object to Henry's standing was in their answer to the original petition for review. Petitioners amended their pleading twice, and each time the amended petition for review became the operative pleading. *See, e.g.*, *Brooks v. B & R Touring Co.*, 939 A.2d 398, 402 (Pa. Super. 2007) (amended complaint, once filed, becomes operative pleading). Respondents objected to Henry's standing in their preliminary objections to the first amended petition for review and again in their preliminary objections to the Petition. The issue is not waived.

Petitioners next argue that this Court need not consider a challenge to Henry's standing since the other Petitioners undisputedly have standing to bring the same claims. They contend that Pennsylvania follows the prevailing rule that if one petitioner has standing to bring a claim, a court need not inquire into the standing of additional petitioners making the same claim. In support, Petitioners cite *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383 (Pa. 2005), and *City of Philadelphia v. Commonwealth*, 838 A.2d 566 (Pa. 2003). These cases are distinguishable; both involved a facial constitutional challenge to an act of the General Assembly. Here, the Petition challenges the Law's licensing requirements for natural hair braiders both facially and as applied to Petitioners in their individual circumstances. That some Petitioners have standing does not automatically confer standing on Henry.

14

We now consider Henry's standing. It is axiomatic that "[a] party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Bergdoll v. Kane*, 731 A.2d 1261, 1268 (Pa. 1999) (quoting *Nye v. Erie Insurance Exchange*, 470 A.2d 98, 100 (Pa. 1983)). "[I]t is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975). A person is "aggrieved" if she has a "substantial, direct and immediate interest in the claim sought to be litigated." *Bergdoll*, 731 A.2d at 1268.

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it[.]

*South Whitehall Township Police Service v. South Whitehall Township*, 555 A.2d 793, 795 (Pa. 1989) (internal citations omitted).

According to the Petition, Henry does not braid hair for compensation. She avers that it is her goal to open her own natural hair braiding salon and, but for the Law's education and testing requirements, she would begin braiding hair for compensation. We agree with Respondents that, based on these averments, Henry lacks standing to challenge the Law as applied to her. Only a person who practices cosmetology for compensation, without a license, risks penalty under the statute. *See* Sections 1 and 20(a) of the Law, 63 P.S. §§507, 526(a).[15] Because Henry is not

---

[15] Section 1 states that "'cosmetology' includes any or all work done for compensation" that is "generally and usually performed by cosmetologists," including "braiding" of hair. 63 P.S. §507.

currently violating the Law, she is not aggrieved in any way that surpasses the common interest of all citizens.

We also reject Petitioners' argument that Henry has the requisite standing to bring her as-applied challenge under the doctrine of pre-enforcement review. In support of this argument, Petitioners argue that Henry has expressed her intent to open her own salon and provide natural hair braiding services for compensation. She should not have to risk criminal prosecution to test the constitutionality of the Law's licensing requirements. Those requirements impose an "impossible choice" on Henry: risk sanctions by pursuing her career goal or leave her family and community to travel an unreasonable distance to enroll in a Board-approved program while foregoing the opportunity for employment in the meantime. Petitioners' Answering Brief at 18.

In support of their argument, Petitioners cite *Yocum v. Pennsylvania Gaming Control Board*, 161 A.3d 228 (Pa. 2017), and *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497 (Pa. 2019). In both of these cases, the court stated that "[o]ur existing jurisprudence permits pre-enforcement review of statutory provisions in cases in which petitioners must choose between equally unappealing options[.]" *Yocum*, 161 A.3d at 236 (quoting *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 924 (Pa. 2013)). *See also Firearm Owners*, 218 A.3d at 512. *Yocum* and *Firearm Owners* are instructive but distinguishable.

In *Yocum*, an attorney employed by the Pennsylvania Gaming Control Board challenged the constitutionality of provisions of the Pennsylvania Race Horse

---

Section 20(a) of the Law states that "[a]ny person who shall practice or teach cosmetology" without a license may be subject to a fine not exceeding $300 or imprisonment for up to three months. 63 P.S. §526(a).

16

Development and Gaming Act[16] prohibiting her from, *inter alia*, appearing before the board or accepting employment with a licensed gaming entity for a period of two years after termination of employment by the board. The petitioner argued that she was faced with two equally unappealing and untenable options: (1) test the act's employment provisions by violating them, knowing it would subject a licensed entity that hired her to administrative penalties and the petitioner to sanctions for breach of her fiduciary duty to clients, or (2) forego the practice of law in her area of expertise for two years. The board asserted that the petitioner lacked standing because she was still employed by the board and not yet aggrieved; that her claims were not ripe because enforcement of post-employment restrictions against her was hypothetical and speculative; and her request for pre-enforcement review was premature.

In overruling the board's objections based on standing and ripeness, our Supreme Court accepted as true the petitioner's allegations that she wished to leave her board position and find another job in her specialty, even though she was still employed by the board, and that the statute facially restricted her ability to seek future employment opportunities in her specialty, even though the details of her departure from board employment were not yet known. *Yocum*, 161 A.3d at 237. The Court also observed that additional factual development of the petitioner's claims, should she seek employment with or be recruited by a licensed gaming entity, were not likely to shed more light on the constitutionality of the employment restrictions. The Court noted that such questions of law are "particularly well-suited for pre-enforcement review." *Id*. (quoting *Robinson Township*, 83 A.3d at 917).

In *Firearm Owners*, a firearm rights organization and individual gun owners challenged the constitutionality of ordinances enacted by the City of

---

[16] 4 Pa. C.S. §§1101-1904.

17

Harrisburg that regulated in some fashion the use, possession, ownership or transfer of firearms within the city and imposed criminal sanctions for their violation. The trial court sustained the city defendants' demurrer and dismissed the complaint for lack of standing, reasoning that because the plaintiffs did not allege that they had ever been cited or threatened with a citation under any of the ordinances, their asserted harm was speculative. On appeal, this Court held that the plaintiffs had standing to challenge all but one of the firearm ordinances. Citing the above-quoted language from *Robinson Township*, we reasoned that the plaintiffs, "who believe that the challenged ordinances are facially invalid restrictions on rights afforded them under the United States and Pennsylvania Constitutions, have no real alternative avenue to address their grievance. They can curb their conduct to conform to the ordinances' mandates or they can willfully violate the law and face criminal prosecution." *Firearm Owners*, 218 A.3d at 513.

*Yocum* and *Firearm Owners* are distinguishable from the case *sub judice* for the simple reason that the prior decisions addressed facial constitutional challenges. In that context, it was unreasonable, and unnecessary, to require the plaintiffs to violate the law or ordinance at issue in order to challenge it. Here, Henry is asserting that the Law's licensing requirements are unconstitutional as applied to her. We agree with Respondents that there must be a practical limit to an individual's ability to pursue an as-applied constitutional challenge when she has not sufficiently averred a direct and immediate interest. Petitioners do not aver that either Respondent has taken or plans to take an action against Henry. Henry's circumstance differs from that of Diop and Gaye because her interest in the commercial practice of natural hair braiding is purely aspirational. Diop and Gaye, by contrast, are engaged in natural hair braiding for compensation or employ

18

unlicensed braiders. The alleged harm to Henry is speculative, and Petitioners have not presented facts to establish her direct and immediate interest in asserting an as-applied challenge. As noted previously, Respondents do not challenge Henry's standing to assert a facial constitutional challenge to the Law's licensing requirements.

For all of the above reasons, we sustain Respondents' objection to the standing of Henry to challenge the Law's licensing requirements as applied to her.

**B. Facial Substantive Due Process Challenge**

Respondents' second preliminary objection is a demurrer to Petitioners' facial substantive due process challenge to the Law's licensing requirements in Count I of the Petition. In Count I, Petitioners assert that the licensing requirements are unreasonable and lack a real and substantial relationship to any legitimate government interest. They contend that several of their factual averments support their constitutional claim. First, the Bureau conducted a "critical and comprehensive review" of the facts and circumstances surrounding the natural hair braiding license under standards similar to the legal substantive due process analysis and determined that the natural hair braiding license was onerous, unduly burdensome, beyond the necessities for protecting public health and safety, and had no relation to protecting the public. Petition ¶¶73, 75, 86-92. Second, Respondents have not produced a study, report, or other information to demonstrate that there is any danger or risk to public health or safety from unlicensed natural hair braiding. *Id*. ¶¶32-42, 53, 84, 219-21, 246-49. Petitioners argue that the Commonwealth does not need to exercise its police power in this area because members of the public can judge any risk for themselves. Third, the Law and the accompanying regulation require that only 42% of the instructional hours be devoted to natural hair braiding, which is lower than the

percentage our Supreme Court deemed unreasonable in an analogous case. Petition ¶¶191-92. *See also Ladd v. Real Estate Commission*, 230 A.3d 1096, 1112-13 (Pa. 2020). Fourth, the testing requirements imposed by the Law and the regulation are substantially unrelated to the practice of natural hair braiding. Petition ¶¶11-17, 26-30, 197-99, 201-03, 205-06.

"Legislation enacted by the General Assembly enjoys a presumption of constitutionality." *Germantown Cab Co. v. Philadelphia Parking Authority*, 206 A.3d 1030, 1041 (Pa. 2019). "Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution." *Id*. (quoting *Pennsylvanians Against Gambling Expansion Fund*, 877 A.2d at 393). "Any doubts about whether a challenger has met this high burden are resolved in favor of finding the statute constitutional." *Germantown Cab Co.*, 206 A.3d at 1041. "Constitutional challenges to legislative enactments present this Court with questions of law[.]" *Id*.

"A statute is facially unconstitutional only where there are no circumstances under which the statute would be valid." *Id*. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Peake v. Commonwealth*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015) (quoting *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011)). Accordingly, our Supreme Court has explained: "In determining whether a statute is facially invalid, courts do not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases." *Germantown Cab Co.*, 206 A.3d at 1041.

"For substantive due process rights to attach, there must be a deprivation of a constitutionally protected interest or property right." *Haveman v.*

20

*Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 238 A.3d 567, 573 (Pa. Cmwlth. 2020) (citing *Khan v. State Board of Auctioneer Examiners*, 842 A.2d 936, 946 (Pa. 2004)). "If the statute restricts a fundamental right, it is reviewed under strict scrutiny. If the statute impacts a protected but not fundamental right, then it is subject to rational basis review." *Haveman*, 238 A.3d at 573. "[A]lthough the right to engage in a licensed profession is an important right, it is not a fundamental right." *Germantown Cab Co.*, 206 A.3d at 1043. Thus, the rational basis test applies here. Our Supreme Court has defined the rational basis test applicable to substantive due process challenges brought under the Pennsylvania Constitution as follows:

> [A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

*Gambone v. Commonwealth*, 101 A.2d 634, 637 (Pa. 1954).

In short, we must determine whether, accepting the well-pleaded material allegations in the Petition as true, Petitioners can establish that the Law's licensing requirements for natural hair braiders, on their face, are "unreasonable, unduly oppressive, or patently beyond the necessities of the case," and that those requirements do not bear a "real and substantial relation" to the public interest they seek to advance. *Id.*

Here, the legitimacy of the state purpose is undisputed. The title of the Law, as amended, is "[t]o promote the public health and safety by providing for

21

examination, licensing and granting of permits for those who desire to engage in the profession of cosmetology[.]"  Act of July 7, 2006, P.L. 704, No. 99, §1.  Our Supreme Court has also observed that the Law and its counterpart commonly referred to as the Barber License Law[17] "have but one purpose, and that is the protection of patrons of barber and beauty shops."  *Department of Licenses and Inspections, Board of License Inspection and Review v. Weber*, 147 A.2d 326, 328 (Pa. 1959).  Thus, we consider whether the licensing requirements for natural hair braiders bear a rational, *i.e.*, "real and substantial," relationship to the health and safety of hair salon patrons.

We agree with Respondents that Petitioners have not demonstrated that the Law, on its face, clearly violates the Pennsylvania Constitution.  Prior to 2006, one seeking to practice natural hair braiding was required to obtain a cosmetology license with 1,250 hours of instruction.  In 2006, the General Assembly created a limited license tailored to the practice of natural hair braiding; currently, an applicant is required to pass a written examination and complete only 300 hours of Board-approved instruction in professional practices, including sanitation; sciences, including scalp care and anatomy; and cognitive and manipulative skills related to natural hair braiding.  Section 5(b)(3)(i) of the Law, 63 P.S. §511(b)(3)(i); 49 Pa. Code §7.129(f).  Ensuring that individuals who offer natural hair braiding services to the public have basic knowledge of sanitation, scalp care and anatomy is reasonably related to protecting the safety and health of patrons of hair salons.  These licensing requirements, and the requirement that licensees have training in the cognitive and manipulative skills related to their chosen profession, are not

---

[17] Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. §§551-567.

"unreasonable, unduly oppressive or patently beyond the necessities of the case[.]" *Gambone*, 101 A.2d at 637.

The problem with Petitioners' case is that their factual averments relate to why the Law's licensing requirements, as applied to them as experienced natural hair braiders, are unreasonable. Their averments do not indicate why a person with little or no experience in natural hair braiding should not be required to satisfy the limited license requirements before offering braiding services to the public for compensation. It was reasonable for the legislature to ensure that such an individual first learn the cognitive and manipulative skills necessary to braid hair, and receive basic training in subjects such as sanitation, anatomy and scalp care. These are certainly "circumstances under which the statute would be valid." *Germantown Cab Co.*, 206 A.3d at 1041. Further, the Bureau Report and the Governor's recommendation to eliminate the natural hair braiding limited license are irrelevant to Petitioners' facial substantive due process claim. The legislature has decided to regulate natural hair braiding services, and it is for the legislature, not this Court, to decide whether deregulation of such services is warranted. We reject Petitioners' suggestion that the Report is somehow binding on this Court's constitutional analysis.

For all of these reasons, we sustain Respondents' preliminary objection to Petitioners' facial substantive due process challenge in Count I of the Petition.[18]

_____

[18] Because we sustain Respondents' preliminary objection to Count I of the Petition, thereby dismissing Petitioners' facial substantive due process challenge, we need not consider Respondents' preliminary objection that Petitioners failed to join all indispensable parties to Count I. *See supra* note 12.

## C. Facial and As-Applied Equal Protection Challenges

Respondents' final preliminary objection is a demurrer to Count II of the Petition, in which Petitioners assert that the Law's licensing requirements violate the equal protection clause in Article I, Section 26 of the Pennsylvania Constitution, both facially and as applied to them. "The essence of an equal protection claim is that persons in similar circumstances must be treated similarly." *Burns v. Public School Employees' Retirement Board*, 853 A.2d 1146, 1152 (Pa. Cmwlth. 2004). "However, a state may recognize differences and create classifications so long as all similarly situated persons are treated alike." *Id.* "Where the challenged statute does not burden fundamental rights and does not implicate a suspect or quasi-suspect classification, it survives equal protection analysis if it is rationally related to a legitimate government interest." *Id.*

Underpinning Petitioners' equal protection claims is their assertion that licensed cosmetologists may perform natural hair braiding services for compensation even though no Pennsylvania statute or regulation requires licensed cosmetologists to have any training in the specific skills required to perform natural hair braiding. Petition ¶277. Petitioners argue that they and other unlicensed natural hair braiders are similarly situated to licensed cosmetologists because neither group of individuals has completed the statutorily mandated 300 hours of Board-approved subjects, including the 125 hours of "cognitive and manipulative skills related to natural hair braiding." *Id.* ¶278; 49 Pa. Code §7.129(f). Thus, Respondents "treat similarly situated persons differently by permitting cosmetologists to perform natural hair braiding services within the Commonwealth of Pennsylvania without any required training, instruction, or testing in natural hair braiding skills, but prohibiting [P]etitioners [and other unlicensed natural hair braiders] from legally

24

performing natural hair braiding services within the Commonwealth of Pennsylvania until they undergo the Board[-]specified training, instruction, and testing in natural hair braiding skills[.]" Petition ¶281.

We disagree with Petitioners' premise that they and other unlicensed natural hair braiders are similarly situated to licensed cosmetologists. Although cosmetology students are not required to complete the statutorily mandated 300 hours of subjects required for the limited natural hair braiding license, it does not follow, as Petitioners infer, that all licensed cosmetologists lack training and skills in natural hair braiding. Cosmetologists must complete 1,250 hours of training at an accredited school to obtain a license. *See* Section 6(b.1)(1) of the Law, 63 P.S. §512(b.1)(1). By definition, "cosmetology" includes all work performed "for the embellishment … and beautification of the human hair, such as arranging, braiding, dressing . . . or similar work thereon and thereabout[.] The term also includes the acts comprising the practice of . . . natural hair braiding[.]" Section 1 of the Law, 63 P.S. §507. *See also Diwara*, 852 A.2d at 1283 (holding that hair braiding is encompassed in the definition of "cosmetology"). The Board's regulation requires that the cosmetology curriculum include instruction in "Cosmetology Skills – Cognitive and Manipulative," which covers skills such as "Hair Shaping," "Hair Styling/Fingerwaving," and "Care of all hair types and textures." 49 Pa. Code §7.129(a).[19] Thus, licensed cosmetologists, unlike Petitioners and other unlicensed natural hair braiders, must receive substantial instruction in various cosmetology skills, including skills related to natural hair braiding. The two groups are not similarly situated and, thus, Petitioners' equal protection claims must fail.

---

[19] The Board recommends that the basic cosmetology curriculum include 1,000 hours of instruction in "Cosmetology Skills – Cognitive and Manipulative." 49 Pa. Code §7.129(a).

25

Accordingly, we sustain Respondents' preliminary objection to Count II of the Petition.

## VI. Conclusion

In summary, the Court sustains Respondents' preliminary objection to Tanyita Henry's standing to challenge the constitutionality of the Law's licensing requirements for natural hair braiders, as applied to her. Because none of Petitioners' facial constitutional challenges will proceed, Henry is dismissed as a party. The Court sustains Respondents' preliminary objection to Count I of the Petition insofar as it asserts a facial substantive due process challenge to the licensing requirements. In light of that ruling, and in accordance with Respondents' request, the Court does not rule on Respondents' preliminary objection that Petitioners failed to join all indispensable parties to their facial substantive due process challenge. Finally, because Petitioners fail to state a legally sufficient equal protection claim, either facially or as applied to them, the Court sustains Respondents' preliminary objection to Count II of the Petition.

Petitioners' claim in Count I that the Law's licensing requirements, as applied to them, violate their right to substantive due process will proceed for the filing of an answer by Respondents.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Astou Diop, Tanyita Henry, and Awa Gaye, | : : | |
| Petitioners | : : | |
| v. | : : | No. 363 M.D. 2020 |
| Bureau of Professional and Occupational Affairs, State Board of Cosmetology of The Commonwealth of Pennsylvania, | : : : : : | |
| Respondents | : | |

## **O R D E R**

AND NOW this 3rd day of March, 2022, upon consideration of Respondents' preliminary objections to Petitioners' Second Amended Petition for Review in the above-captioned matter, the Court ORDERS as follows:

Respondents' preliminary objection to Petitioner Tanyita Henry's standing to challenge the constitutionality of Section 5(b)(3) of the act commonly known as the Beauty Culture Law (Law), Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §511(b)(3), as applied to her, is SUSTAINED and Petitioner Henry is DISMISSED as a party.

Respondents' preliminary objection to Petitioners' facial substantive due process challenge to Section 5(b)(3) of the Law in Count I of the Second Amended Petition is SUSTAINED and that part of Count I is DISMISSED. The as-applied substantive due process claims raised by Petitioners Astou Diop and Awa Gaye in Count I will proceed and Respondents are directed to file an answer.

Respondents' preliminary objection to Count II of the Second Amended Petition is SUSTAINED and Count II is DISMISSED.

_____

MARY HANNAH LEAVITT, President Judge Emerita

2