IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| G. F., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 366 M.D. 2024 |
| | : | |
| Pennsylvania Department of | : | Argued: December 11, 2024 |
| Human Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE McCULLOUGH                      FILED: Monday, April 21, 2025


On July 25, 2024, G. F. (Petitioner), a certified educator who has been accused of child abuse, initiated this action by filing a Petition for Review in the nature of a complaint against the Pennsylvania Department of Human Services (Department) seeking declaratory and equitable relief in this Court's original jurisdiction. Before the Court are the parties' cross-applications for summary relief. The matter concerns the Department's interpretation and implementation of this Court's unanimous *en banc* decision in *S.F. v. Pennsylvania Department of Human Services*, 298 A.3d 495 (Pa. Cmwlth. 2023), in which we held, as a matter of first impression, that the process

afforded by the Child Protective Services Law[1] (CPSL) denied a special education teacher and other teachers like her their right to procedural due process prior to being listed in a state registry as perpetrators in indicated reports of child abuse. Because the Department failed to follow the procedures outlined in *S.F.*, we grant Petitioner's application for summary relief and deny the Department's application for summary relief.

## I.    Undisputed Facts[2]

Petitioner is a professional educator employed at a public school in Pennsylvania. At all times relevant, Petitioner has maintained an emergency Pennsylvania teacher permit from the Department of Education. In addition to his employment at a school district, Petitioner had a summer job at a youth shelter.

On July 11, 2023, this Court held in *S.F.* that the process outlined in the CPSL for adjudicating ChildLine and Abuse Registry (ChildLine or ChildLine Registry) reports involving teachers was constitutionally deficient. Nine days later, on July 20, 2023, a report of child abuse naming Petitioner as a perpetrator was made to the Department. The alleged abuse occurred on July 19, 2023, at his employment at the youth shelter. The Department conducted an investigation and determined, on or about September 2, 2023, that there was substantial evidence of the alleged child abuse.

On July 7, 2024, the Department issued a document it called a "Special Transmittal," entitled "*S.F. v. Pennsylvania Department of Human Services* – Pre-Deprivation Hearings for Individuals with Valid Teaching Certificate." It was issued to all Children and Families Regional Offices, all County Children and Youth

---

[1] 23 Pa. C.S. §§ 6301-6386.

[2] The parties have stipulated to all facts necessary to resolve the cross-applications for summary relief.

Agencies, the Pennsylvania Children and Youth Administrators Association, and the Department's Bureau of Hearings and Appeals (BHA). The Special Transmittal states that its purpose is:

> [t]o communicate a Commonwealth Court decision from *S.F. v. Pennsylvania Department of Human Services* involving alleged perpetrators who hold a valid Pennsylvania (PA) teaching certificate, and to provide guidance to investigative agencies regarding the established pre-deprivation process.

(Pet. for Rev., Ex. A, at 1.) The Special Transmittal includes a brief summary of the *S.F.* case and holding. It further states that the Department's Office of Children, Youth, and Families (OCYF) partnered with the BHA to develop a "pre-deprivation process to align with the Commonwealth Court decision for ensuring due process." *Id.* at 2. Pursuant to the Special Transmittal,

> Individuals meeting pre-deprivation eligibility criteria below and being recommended for an indicated status in a Child Protective Services (CPS) report **are entitled to a hearing to determine if** *prima facie* **evidence exists prior to being placed on the Pennsylvania child abuse registry as indicated**.

*Id.* (emphasis added).

The "investigative process" into allegations of child abuse involving teachers remains the same as the process outlined in Sections 6334 and 6368 of the CPSL, 23 Pa. C.S. §§ 6334, 6368. *Id.* at 5. If the investigators find that the allegations in the ChildLine report are substantiated, the Department must notify the alleged perpetrator and BHA within six calendar days that it is requesting a pre-deprivation hearing. *Id.* at 6. BHA will then schedule a "pre-deprivation hearing" within 15 calendar days and notify the parties. *Id.* at 6-7.

The Special Transmittal speaks of a two-step hearing process: (1) a "pre-deprivation hearing"; and (2) a "full merits hearing." The Special Transmittal describes the first step as follows:

> This pre-deprivation hearing for an indicated recommendation **is an abbreviated virtual hearing** (using the virtual software approved by the Commonwealth) **that gives the opportunity for the investigative agency representative to present their case and for the alleged perpetrator to have an opportunity to respond to the prima facie evidence presented.**
>
> * * *
>
> During the pre-deprivation hearing, the investigative agency representative shall read the abuse allegation(s), dates of alleged abuse and state the evidence that supports that the abuse occurred. The investigative agency shall be prepared to address each allegation that is being recommended to be indicated for the alleged perpetrator.
>
> The alleged perpetrator is entitled to have legal representation at the pre-deprivation hearing. The alleged perpetrator or their legal counsel will be given the opportunity **to present information that disputes the investigative agency information and any relevant documents that may refute the factual allegations made by the investigative agency representative. The alleged perpetrator's legal counsel may speak on behalf of the alleged perpetrator during the pre-deprivation hearing**. BHA will have the opportunity to ask questions to either party, as necessary.
>
> **The pre-deprivation hearing does not include the presentation of evidence that is not related to the factual allegations presented by the investigative agency witness, and it does not include a determination of whether substantial evidence exists to indicate because that**

4

**determination is reserved for the full merits hearing**. The investigative agency has the burden to present prima facie evidence.

*Id.* at 7-8 (emphasis added).

On July 8, 2024, the day after the Special Transmittal was issued, the Department sent notice to Petitioner that it recommended that he be listed as a perpetrator in an indicated report of child abuse on the ChildLine Registry. On July 12, 2024, the Department's BHA then sent Petitioner a hearing notice setting a telephone hearing for July 30, 2024. The Hearing Notice states that the purpose of the hearing is "to determine if the allegations are sufficient to list the alleged perpetrator in the child abuse registry." (Pet. for Rev., Ex. C, at 1.) The Hearing Notice further provides in all capitalized letters "THIS IS NOT A FULL HEARING TO DETERMINE WHETHER OR NOT YOU COMMITTED CHILD ABUSE." *Id.* (capitalization in original). The Hearing Notice describes the government's burden "to show that [its] investigation findings, **which are assumed to be true for the purposes of this hearing only, establish sufficient evidence that you are a perpetrator of child abuse as defined by the Child Protective Services Law**." *Id.* (emphasis added). According to the Hearing notice:

> At the hearing, the County Agency or Department representative will present an outline of their evidence showing that you belong on the PA child abuse registry. **You will not be permitted to put on a full defense**. However, you will be permitted to make a statement and present documentation.

*Id.* (emphasis added).

On July 25, 2024, Petitioner initiated this action by filing a Petition for Review in the Nature of a Complaint Seeking Declaratory and Equitable Relief in this Court's original jurisdiction. The Petition for Review consists of three Counts. Count

5

I (Violation of Due Process) avers that the two-step adjudicative process articulated in the Special Transmittal and Hearing Notice fails to satisfy due process standards as set forth in *S.F.* and seeks two declarations: (1) that the process outlined in the Special Transmittal and Hearing Notice is inadequate under the due process clause of the Pennsylvania Constitution because the accused may not present witnesses or cross-examine adverse witnesses, and because the administrative law judge assigned to preside is not empowered to decide factual issues; and (2) that the Department must prove before a neutral adjudicator that the teacher has committed child abuse prior to the teacher being listed on the ChildLine Registry. Count I further seeks an injunction prohibiting the Department from listing Petitioner or any other teacher on the ChildLine Registry as a perpetrator of an indicated report of child abuse without providing the teacher with a meaningful opportunity to be heard, which includes an opportunity to present witnesses, to cross-examine adverse witnesses, and to have an impartial adjudicator decide factual and legal issues.[3] Counts II and III of the Petition for Review are pleaded in the alternative. Count II (Violations of Commonwealth Documents Law[4] and Regulatory Review Act[5]) alleges that the Special Transmittal is

---

[3] Petitioner filed an application for relief in the nature of a preliminary injunction. On July 26, 2024, this Court issued an *ex parte* injunction against the Department prohibiting it from holding the July 30, 2024 hearing until after disposition of Petitioner's Application for Special Relief. The Court scheduled a hearing on the Application for Special Relief for August 7, 2024. In lieu of a hearing on the Application for Special Relief, the parties filed a stipulation with this Court on August 2, 2024. The Department stipulated that it will not place Petitioner or any teacher on the ChildLine Registry as a perpetrator in an indicated report of child abuse pending final judgment by this Court on the Petition for Review.

[4] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602, and 45 Pa. C.S. §§ 501-907, which, collectively, are known as the "Commonwealth Documents Law." This was the official short title of the 1968 enactment. *See* Section 101 of the Act of July 31, 1968, P.L. 769.

[5] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-745.14.

6

essentially a regulation that was not promulgated in accordance with the Commonwealth Documents Law and the Regulatory Review Act and, as such, it is unenforceable. Count III (Ultra Vires Act) alleges that, by enacting the Special Transmittal, the Department has acted beyond its statutory authority.

The parties have filed cross-applications for summary relief which are now before us for disposition. Petitioner argues he is entitled to judgment as a matter of law on all counts of the Petition for Review. It is Petitioner's position that the Department issued the Special Transmittal in derogation of, and in blatant disregard of, this Court's binding decision in *S.F.* He contends that while *S.F.* held that teachers must be given the right to adduce evidence, confront their accusers, and have disputed facts and law resolved prior to the deprivation, the process created by the Department and imposed upon Petitioner does the complete opposite by depriving the teacher of a pre-deprivation hearing.

The Department argues that (1) Petitioner lacks standing because he has not yet been aggrieved; (2) Petitioner's claims are not ripe for review as no pre-deprivation hearing has taken place and Petitioner may not be harmed because he may not be placed on the ChildLine Registry; (3) the Special Transmittal does not violate due process because it complies with the adjudicative process similar to the process authorized by the United States Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) (due process due public employee includes oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond); (4) Petitioner's claims are barred by sovereign immunity; and (5) the Special Transmittal does not violate the Commonwealth Documents Law or Regulatory Review Act because it was an interpretive rule issued

7

to explain the implications of *S.F.* As such, it is exempt from notice and comment rulemaking and regulatory review requirements.

## II. *S.F. v. Department of Human Services*

The petitioner in *S.F.* was a special education teacher in a Pennsylvania school district. A report of suspected child abuse was made to ChildLine naming her as a perpetrator. The county agency investigated the report, determined that the allegations were substantiated, and placed an indicated report of child abuse on the ChildLine Registry naming the petitioner as a perpetrator.

Prior to any hearing on the matter, S.F. filed a petition for review in this Court's original jurisdiction alleging, *inter alia*, that Section 6368 of the CPSL, 23 Pa. C.S. § 6368, is constitutionally deficient under article I, section 1 of the Pennsylvania Constitution, Pa. Const., art. I, § 2, (as applied to the petitioner and other school employees and on its face), as the statute provides no pre-deprivation due process to individuals listed as perpetrators in indicated reports of child abuse. The matter was submitted to the Court on cross-applications for partial summary relief.

Addressing procedural due process, we examined S.F.'s due process challenge in two steps: "the first asks whether there is a life, liberty, or property interest with which the state has interfered, and the second examines whether the procedures attendant to that deprivation are constitutionally sufficient." *S.F.*, 298 A.3d at 512 (citing *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). We found the first step to be "easily answered," as "the notion that a teacher's due process rights are implicated by placement on the ChildLine Registry is settled." *Id.* at 511.

Turning next to the second due process step, this Court utilized the balancing test developed by the United States Supreme Court in *Mathews v. Eldridge*,

8

424 U.S. 319 (1976). As we explained, the *Mathews* balancing test includes consideration of three factors.

> First, [courts] must consider the private interest that will be affected by the official action. Second, [courts] consider the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Third, [courts] consider the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*S.F.*, 298 A.3d at 510.

We considered the first *Mathews* factor and concluded that teachers like the petitioner named as perpetrators in indicated reports face significant and unique reputational consequences. We found that being named as a perpetrator in an indicated report "affects not only the teacher's present employment in the child education field; it effectively bars the teacher from obtaining similar employment or benefits in the future." *Id.* at 516.

We then analyzed the second *Mathews* factor: a consideration of the risk of erroneous deprivation and the value of additional safeguards. We began our resolution by articulating the central concern with the CPSL scheme raised in the case:

> Under the process currently afforded by the CPSL, [the p]etitioner, and teachers like her, **do not receive any kind of hearing prior to being listed in an indicated report in the ChildLine Registry**. Instead, the decision of whether a teacher should be placed in the ChildLine Registry depends upon a caseworker's credibility evaluation of the accused and the witnesses against her. **Consequently, the accused is denied the basic elements of procedural due process,** *i.e.*, **an opportunity to present witnesses, to cross-examine adverse witnesses, and have an impartial adjudicator decide factual and legal issues.**

9

*S.F.*, 298 A.3d at 519 (emphasis added). We then reviewed the seminal case addressing due process in the administrative forum, *Goldberg v. Kelly*, 397 U.S. 254 (1970), and the undisputed statistics provided by the parties showing a high percentage of indicated reports that are overturned after a BHA hearing. In concluding that the risk of erroneous deprivation was high and that additional safeguards would be valuable, we stated:

> As in *Goldberg*, we conclude the risks here are too high for a teacher and "the possibility for honest error or irritable misjudgment too great" to allow damage to the teacher's reputation and employment interests without giving her a chance, if she so desires, to be fully informed of the case against her so that she may contest its basis and produce evidence before an impartial examiner in rebuttal. *Goldberg*, 397 U.S. at 266. **By the time the post-deprivation hearing is held, the damage to the teacher's reputation has already been done** and might not be capable of being undone by a later finding that the allegations of abuse were unfounded.

*S.F.*, 298 A.3d at 523 (emphasis added).

To conclude, we considered the third *Matthews* factor. The third step of the *Matthews* inquiry requires a consideration of whether the government has an interest in maintaining the procedures outlined in the CPSL and the administrative burden of providing additional procedures. The parties agreed that the Commonwealth has a vital interest in protecting children from abuse. We considered the various legal requirements already in place in the school environment and concluded that "the Commonwealth does not appear to have a strong interest in denying accused teachers a pre-deprivation process before listing them on the ChildLine Registry on the grounds that doing so would expose the child and other children from further abuse." *Id.* at 527. We found no reason to believe that the existing mechanisms, such as background checks for teachers, plans of supervision or alternative arrangements that must occur

10

as soon as an allegation of abuse is made, and the common law obligation of school administrators to protect children would be less effective if a hearing is provided to teachers before they are listed on the ChildLine Registry as perpetrators of child abuse. *Id.*

Our application of the *Mathews* factors led us to hold that Section 6368 of the CPSL did not provide adequate due process protections. We held that

> **the interests of [the p]etitioner and other teachers are strong, the risk of error is high, and [the Department's] interest in forgoing a pre-deprivation hearing is low. If erroneous information is added to the ChildLine Registry, the damage to the teachers may be done before a post-deprivation hearing is conducted to remove that information. Therefore, we conclude that due process requires that [S.F.] and other teachers must be provided a hearing prior to being listed as a perpetrator of abuse in an indicated report on the ChildLine Registry**. Where an accused challenges the truthfulness of her accusers and contends, as a matter of fact, that the charge against her is false, **she must be allowed, as a function of procedural due process, in addition to fair notice, to be present, to adduce evidence, to be represented by counsel, to confront the witnesses against her and to receive a written decision**. The current CPSL, as applied to [the p]etitioner and other teachers, does not afford [the p]etitioner minimal due process protection and has **deprived [the p]etitioner and other teachers of their procedural due process rights by failing to provide a pre-deprivation hearing**.

*Id.* at 527 (emphasis added).

11

## III. Analysis[6]

### A. *Standing and Ripeness*

We first consider the Department's claims of lack of standing and ripeness because these justiciability concerns affect our Court's ability to adjudicate the matter. *Pennsylvania State Education Association v. Public School Employees' Retirement Board*, 311 A.3d 1017, 1028 (Pa. 2024). The Department argues that Petitioner lacks standing to bring this action, and his claims are not ripe because the pre-deprivation hearing has not yet occurred, and he has not been placed on the ChildLine Registry as a result of the pre-deprivation hearing. Therefore, Petitioner has not been aggrieved because no harm has occurred. The Department maintains that this Court should not rule on the matter until after the pre-deprivation hearing at issue has taken place. Only then, it submits, would the Court be able to consider if Petitioner received adequate due process. In addition, the Department contends that Petitioner may in fact obtain a successful result from the pre-deprivation hearing, thereby mooting his claims. Therefore, any harm he alleges is speculative.

Standing is a "threshold requirement that must be established prior to judicial resolution of a dispute." *Id.* Pursuant to the standing doctrine, "judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract." *Id.* To that end, the standing doctrine protects against "improper plaintiffs" by preventing litigation by "a person who is not adversely impacted by the matter he seeks to challenge." *Id.* at 1028-29. Courts of this Commonwealth consider standing questions through a three-part inquiry. *Id.* at 1029. An "individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and

---

[6] Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b).

immediate interest in the outcome of the litigation." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005). An interest is "substantial" if it is an interest in the resolution of the challenge which surpasses the common interest of all citizens in procuring obedience to the law. Likewise, a "direct" interest mandates a showing that the matter complained of caused harm to the party's interest, *i.e.*, a causal connection between the harm and the violation of law. Finally, an interest is "immediate" if the causal connection is not remote or speculative. *Id.* at 660.

Regarding ripeness, our courts have recognized a "considerable overlap" between the concepts of standing and ripeness but equally understand that they are distinct. *Yocum v. Pa. Gaming Control Board*, 161 A.3d 228, 234 (Pa. 2017). As noted, standing requires a litigant to be aggrieved, *i.e.*, he must have a substantial, direct, and immediate interest in the litigation. Ripeness "reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." *Id.* at 234 (citation omitted). For a matter to be ripe, there must be an "actual controversy," with consideration given to "whether the issues are adequately developed and the hardships that the parties will suffer if review is delayed." *Bayada Nurses, Inc. v. Department of Labor & Industry*, 8 A.3d 866, 874 (Pa. 2010). Thus, the justiciability doctrines of standing and ripeness are closely related because both may encompass allegations that the petitioner's harm is speculative or hypothetical and resolving the matter would constitute an advisory opinion. *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013). However, ripeness is distinct from standing as it addresses whether the factual development is sufficient to facilitate a judicial decision. *Id*.

Pursuant to these principles, our task in this case is to first decide whether Petitioner has standing to assert his request for declaratory relief. This requires us to

13

determine if he has a substantial, direct, and immediate interest in the harm alleged. The harm Petitioner alleges centers on the constitutional sufficiency of the pre-deprivation procedure outlined in the Special Transmittal. Specifically, Petitioner seeks a declaration that the pre-deprivation procedures afforded to him pursuant to the Special Transmittal do not satisfy constitutional due process standards.

We find Petitioner's interest in the due process procedures associated with indicated reports of child abuse is "substantial" because it far exceeds the interest of the public at large in the adequacy and legality of the pre-deprivation procedures employed by the Department. The ordinary citizen has little to no interest in the adjudicative process associated with reports of child abuse involving teachers or whether the Department's Special Transmittal comports with due process protections as set forth in *S.F.* Petitioner's interest is also "direct" because he is being subjected to the Department's pre-deprivation process, which does not allow him the opportunity to present witnesses, to cross-examine adverse witnesses, and to have an impartial adjudicator decide factual and legal issues. That process is causally connected to the asserted harm to his right to a full merits hearing before he is placed on the ChildLine Registry.

Finally, Petitioner's interest in securing a pre-deprivation hearing that aligns with due process standards is immediate, not remote or speculative. Under this prong, "the concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it. . . . [I]t is clear that the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 282-83 (Pa. 1975). In applying the test to the facts, we find the causal connection between the Special Transmittal and the injury to Petitioner is

14

sufficiently close to afford him standing. The purpose of a declaratory judgment action is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa. C.S. § 7541(a). *Pennsylvania Association of Life Underwriters v. Foster*, 608 A.2d 1099, 1102 (Pa. Cmwlth. 1992). Here, Petitioner has adequately alleged that the Special Transmittal does not include the specific due process protections this Court set forth in *S.F.* Without this Court's intervention, the pre-deprivation hearing **will** take place pursuant to the challenged parameters defined in the Special Transmittal. If Petitioner is correct about the Special Transmittal, he will, with certainty and imminently, suffer a deprivation of a constitutionally protected interest. Thus, the likelihood of the alleged harm is sufficiently definite.

By arguing that we could just wait and see what happens, the Department confuses the future question of whether Petitioner will ever be placed on the ChildLine Registry with the present and clear issue of whether Petitioner will suffer a denial of his due process rights under the Special Transmittal. The aggrievement alleged by Petitioner is not limited to the possible outcome of the pre-deprivation hearing but focuses on his rights to adequate due process at the pre-deprivation hearing. Accordingly, this Court concludes that "[a]n actual controversy exists [that] is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *Eleven Eleven Pa., LLC v. State Board of Cosmetology*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017).

We similarly find this matter is ripe for consideration. As noted, ripeness addresses the question of whether review is premature. We are confident that the facts have evolved to the point that judicial involvement is appropriate, and the Department does not argue otherwise. Waiting for the process outlined in the Department's Special

15

Transmittal to be imposed upon Petitioner would add little to this Court's review of the constitutional question of law presented. *See Robinson,* 83 A.3d at 920. Accordingly, the question presented by Petitioner is ripe for review and the Department's motion is denied to the extent it seeks summary judgment on the issue of standing and ripeness.

### B. *Whether the Pre-Deprivation Hearing Described in the Special Transmittal Follows S.F.*

There is no question that the pre-deprivation hearing provided to teachers under the Special Transmittal does not align with this Court's holding in *S.F.* In *S.F.*, we expressly held that

> **due process requires that** [the p]etitioner and other teachers **must be provided a hearing prior to being listed as a perpetrator of abuse in an indicated report on the ChildLine Registry.** Where an accused challenges the truthfulness of her accusers and contends, as a matter of fact, that the charge against her is false, **she must be allowed, as a function of procedural due process, in addition to fair notice, to be present, to adduce evidence, to be represented by counsel, to confront the witnesses against her and to receive a written decision**.

*S.F.*, 298 A.3d at 527 (emphasis added).

We could not have been clearer in this regard. Despite that specific and unambiguous holding, the Department nonetheless has adopted a pre-deprivation hearing procedure that **does not** include the opportunity for the teacher to confront witnesses, to present and cross-examine witnesses and to have a neutral adjudicator decide whether the teacher committed child abuse before he is placed on the ChildLine Registry. The teacher will not be permitted to put on a full defense at the pre-deprivation hearing. Instead, he will only be permitted to "notice and an opportunity to be heard." BHA will only consider the evidence and determine if the agency has

presented *prima facie* evidence of abuse. If so, the teacher is placed on the ChildLine Registry. The full merits hearing does not occur until **after** a teacher is placed on the ChildLine Registry. This will be the first opportunity for the teacher to confront his accusers, to present and cross-examine witnesses, and to have a neutral adjudicator determine whether the teacher committed child abuse. The import of our decision in *S.F.* evidently fell upon deaf ears.

The Department argues presently that the Special Transmittal does not violate due process because it "would provide **notice** and an **opportunity to be heard** by the teacher **before** annotation on the ChildLine Registry occurred and **then a post-deprivation hearing** in the form of a full appeal on the merits if it is determined that there is *prima facie* evidence that a teacher should be on the Childline Registry." *Id.* at 11 (emphasis in original). It claims that "notice and an opportunity to be heard" before being placed on the ChildLine Registry, provides all the necessary process that is due and aligns with the U.S. Supreme Court's ruling in *Loudermill*, 470 U.S. at 542-43. It claims that its Special Transmittal does "exactly what the law prescribes" because

> it provides teachers with adequate **notice** that the pre-deprivation process is being requested within six calendar days of the investigative agency's decision, the pre-deprivation hearing is scheduled within fifteen days of [BHA] receiving notice of the need for a pre-deprivation hearing, and **BHA hears the evidence presented by the investigative agency and any information or documents the alleged perpetrator**, or their attorney, provides to dispute the allegations.

(Department's Br. at 26) (emphasis added).

17

As noted above, in arriving at our conclusion in *S.F.*, we painstakingly addressed each of the *Mathews* factors. **In direct contrast to the procedures we declared were necessary to protect a teacher's right to procedural due process in *S.F.*, the Special Transmittal does not include "the right to adduce evidence, . . . [or] to confront the witnesses[,]" and it does not require the adjudicator to consider the facts and issue a final decision before placing the teacher on the ChildLine Registry**. *S.F.*, 298 A.3d at 527. The Department does not explain why it did not adhere to this Court's binding precedent in *S.F.* It indicates only that it "weighed" our decision in *S.F.*, the interests of teachers' reputations and employment, the provisions of the CPSL, and the Commonwealth's interest in keeping predators out of its classrooms, and derived an entirely different due process standard than we did in *S.F.* (Department's Br. at 30.)

Truly, we are hard-pressed to imagine a more egregious example of an unbridled contempt for the judicial process. First, court orders are to be followed by parties to the case, not "weighed" against other interests. This Court **already** weighed the Commonwealth's interest against the fundamental rights of citizens in the *S.F.* opinion and concluded that due process requires teachers to receive a hearing where disputes of facts can be resolved prior to being named as perpetrators in indicated reports of child abuse. It is here that we must emphasize that the Department, as a party to *S.F.*, was free to seek reconsideration or to appeal the order when it was issued in July 2023. It chose not to do so. Therefore, we will not entertain the Department's lengthy and belated arguments spanning 15 pages of its brief explaining the reasons for coming to the opposite conclusion as to teachers' rights to pre-deprivation due process than we did in *S.F.* Frankly, its reasons are irrelevant. For the Department to impose

its own brand of justice in the face of our clear and explicit precedent that it has not persuasively distinguished is quintessentially arbitrary and capricious.

This Court meant what it said when it held that teachers must be afforded a pre-deprivation hearing that embraces the basic elements of procedural due process, which include "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case" in order to safeguard important fundamental constitutional rights. *S.F.*, 298 A.3d at 510. The Department's inattention to that judicial declaration is not well-taken.

## IV.    Conclusion

For the foregoing reasons, Petitioner's application for summary relief as to Count I is granted.[7] The Department's application for summary relief is denied.

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Having determined that G.F. is entitled to summary judgment on Count I, we need not address the merits of G.F.'s alternative issues concerning whether the Special Transmittal violates the Commonwealth Documents Law and Regulatory Review Act (Count II), or whether, by enacting the Special Transmittal, the Department has acted beyond its statutory authority (Count III).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G. F.,                                    :
                Petitioner          :
                                                        :
      v.                                 :     No. 366 M.D. 2024
                                              :
Pennsylvania Department of         :
Human Services,                    :
                Respondent          :

## _ORDER_

AND NOW, this 21st day of April, 2025, G.F.'s Application for Summary Relief as to Count I of its Petition for Review is hereby **GRANTED**. The Pennsylvania Department of Human Services' (Department) Application for Summary Relief is hereby **DENIED**. Judgment is entered in favor of G.F. The Department's October 9, 2024 "Application to File Amended Answer with New Matter to Petition for Review" is **DENIED**.

_____
PATRICIA A. McCULLOUGH, Judge